**Lee and Joan HOLMES,
Plaintiffs-Appellants,**

v.

**DIRECTOR OF REVENUE AND
TAXATION, GOVERNMENT OF
GUAM, Defendant-Appellee.**

No. 86–1795.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 1987.

Decided March 23, 1987.

Vernon F.L. Char, Michael J. Yoshii, Honolulu, Hawaii, J. Bradley Klemm, Agana, Guam, for plaintiffs-appellants.

Donald Krainess, Agana, Guam, for defendant-appellee.

Before NELSON, KOZINSKI and NOONAN, Circuit Judges.

KOZINSKI, Circuit Judge:

We review a summary judgment for the defendant, the Director of Revenue and Taxation of Guam.

### Facts

This case arose in the Northern Marianas and Guam. Guam is a largely self-administered territory of the United States, *see* 48 U.S.C. § 1421a (1982); and the Northern Marianas are part of the United Nations Trust Territory of the Pacific Islands, administered by the United States, *see* H.J. Res. 233, 61 Stat. 397 (1947).

In 1975, after long deliberation and extensive negotiations, the United States and the people of the Northern Marianas agreed that the trusteeship should end. In its place was created the Commonwealth of the Northern Mariana Islands in Political Union with the United States (CNMI). Proclamation No. 5564, 22 Weekly Comp. Pres.Doc. 1522 (Nov. 3, 1986). The Covenant establishing this Commonwealth was ratified by a plebiscite in the Northern Marianas and by the Congress in Public Law 94–241, 90 Stat. 263 (March 24, 1976), *reprinted in* 48 U.S.C. § 1681 note at 736–42 (1982).

As a consequence of the Covenant, the people of the CNMI could look forward to the benefits of American citizenship, effective upon a Presidential proclamation announcing the formal dissolution of the Trusteeship Agreement, an event that finally occurred on November 3, 1986.

Lee and Joan Holmes, already citizens of the United States and residents of Guam, organized the Northern Marianas Cable TV Corporation (NM Cable) in 1978. NM Ca-

ble was to provide cable television programs, cable television advertising, and distribution of periodicals such as *TV Guam* to the denizens of the CNMI. The Holmeses incorporated NM Cable in the CNMI. The corporation had ten shareholders by 1980. Only three (who owned less than one percent of the shares outstanding) were CNMI citizens. All the rest were U.S. citizens, with residences scattered throughout Guam, the CNMI and the continental U.S.

In 1980, NM Cable lost money, an event not wholly unexpected for a new business. The Holmeses, noting that NM Cable had elected to be a Subchapter S Corporation,[1] deducted their share of the company's losses for the year. In June 1984, the appellee notified them of an alleged deficiency in their taxes due to the deduction. A few months later, the Holmeses filed a petition for redetermination in the district court for Guam. Before the district court, the parties filed stipulations that resolved all material issues of fact. Both sides then moved for summary judgment. On January 24, 1986, the district court awarded judgment to the Director, holding that the deduction was improper because NM Cable was not a valid Subchapter S corporation. Undaunted, the Holmeses appeal.

### Contentions of the Parties

The Holmeses argue that, as Guam residents, their deduction of NM Cable's losses should be decided under Guam law. And, they argue, under Guam law NM Cable is a domestic corporation with no nonresident alien shareholders. The Director argues that, even if the deduction were allowable

under a literal reading of the Code and Covenant, it should still be disallowed as "manifestly incompatible" with both. *See* Covenant § 601(c).

### Discussion

The Holmeses are Guam residents and thus subject to the Guam territorial income tax, I.R.C. § 935(b)(1)(B), (c)(3), which substantially incorporates the United States Internal Revenue Code. 48 U.S.C. § 1421i(a). They were thus entitled to deduct their proportionate share of NM Cable's losses, if NM Cable qualified as an "electing small business corporation." I.R.C. § 1374(a).[2]

The parties left two principal issues of law unstipulated: (1) whether NM Cable was a "domestic corporation"; and (2) whether NM Cable had "nonresident aliens" among its shareholders. If NM Cable was not a domestic corporation, or if it had nonresident alien shareholders, the Holmeses lose.

### A.

■ We turn first to the question of whether NM Cable was a domestic corporation. The term is defined in I.R.C. § 7701(a)(4) as including any corporation "created or organized in the United States." Under 48 U.S.C. § 1421i(e) and I.R.C. § 935(c)(2), the so-called "mirroring provisions," we must substitute "Guam" for "United States" in applying the definition; and section 601(c) of the Covenant requires us to include the CNMI within the term "Guam". Applying these rules, NM

---

1. Under the tax law in effect for 1980, a corporation could elect to be a Subchapter S corporation (and thereby pass through its undistributed losses and profits to its shareholders) if it was, inter alia, a domestic, unaffiliated corporation having one class of stock and 15 or fewer shareholders, all of whom were individuals and none of whom were nonresident aliens. I.R.C. § 1371(a) (all citations unless otherwise indicated, are to the I.R.C. provisions in effect for 1980).

2. The district court examined this case from the perspective of the CNMI tax code, relying on *Great Cruz Bay, Inc. v. Wheatley*, 495 F.2d 301 (3d Cir.1974). But *Great Cruz* involved the taxes of a Virgin Islands corporation under Virgin

Islands law. It would thus have been appropriate precedent if this case had involved the taxes of NM Cable, a CNMI corporation. But the Holmeses are Guamanian, so we examine the deduction under Guam law.

In any event, as both parties recognize, the ultimate allowance or disallowance of the deduction does not turn on whether Guam or CNMI law applies. If Guam law applies, we would have to decide whether NM Cable's CNMI shareholders were "nonresident aliens" of Guam; if CNMI law applies, we would have to decide whether NM Cable's Guamanian shareholders were "nonresident aliens" of the CNMI. The analysis in either case would be the same.

Cable, as a CNMI corporation, is also a Guam corporation and is thus a domestic corporation under section 7701. There is no real dispute between the parties that the literal application of the relevant provisions leads to this conclusion.

### B.

■ We next consider whether NM Cable has any nonresident alien shareholders. In 1980, the IRS defined this term, rather straight-forwardly, to include individuals whose "residence is not within the United States and who [are] not citizen[s] of the United States." 26 C.F.R. § 1.871–2(a) (1981). NM Cable's shareholders in 1980 included residents of the continental United States, Guam and the CNMI. By its terms, the regulation excludes the corporation's U.S. resident shareholder from the definition of nonresident alien and, through the mirroring provisions of the Code and Covenant, it also excludes the Guamanian and CNMI resident shareholders.

I.R.C. section 932(a), on which the Director places much reliance, does not lead to a different conclusion. That section provides:

> Any individual who is a citizen of any possession of the United States (but not otherwise a citizen of the United States) and who is not a resident of the United States shall be subject to taxation under this subtitle in the same manner and subject to the same conditions as in the case of a nonresident alien individual. This section shall have no application in the case of a citizen of Puerto Rico or Guam.

This section is inapplicable to the CNMI shareholders for two reasons. First, because the CNMI was not a possession of the United States—it was a United Nations Trust administered by the United States. *See Barusch v. Calvo*, 685 F.2d 1199, 1202 (9th Cir.1982). Moreover, even if it were a possession, the Covenant substitutes "CNMI" for "Guam" in the last sentence, making the section's general rule inapplicable.[3]

### C.

■ The Director's principal argument is that the literal reading of the applicable provisions must yield to section 601(c) of the Covenant which prohibits substituting "CNMI" for "Guam" if doing so is "manifestly incompatible with the intent" of the Code or Covenant. The Director argues that allowing Guamanians to enjoy the benefits of Subchapter S treatment of their CNMI corporation is incompatible with both.

The Director's argument is grounded in the CNMI's decision to rebate 100 percent of the income taxes otherwise owed to it by individuals and corporations. This might allow for the following scenario: In years NM Cable loses money, it could pass those losses through to the Guamanian shareholders because of the Subchapter S election; then, if and when the business becomes profitable, the corporation could revoke the Subchapter S election, subject its income to the CNMI tax and have the entire tax rebated. Guamanians would thereby be able to defer paying income tax on their share of the accumulated gains until dividends were paid or the stock were sold.

This scenario is possible. But we don't see how it is manifestly in compatible with either the Covenant or the Code. The Covenant itself is the source of the CNMI's authority to rebate income taxes. Covenant § 602. And the CNMI does not rebate these taxes without reason: It substitutes in their place a 5 percent gross receipts tax. Northern Marianas Pub.L. 3–11. Nor do we see how the scenario is manifestly incompatible with the Code. The Director claims that allowing the Holmeses their deduction would mean allowing them to deduct NM Cable's losses immediately, while deferring tax on any future profits. That, however, is the effect of a Subchapter S election wherever it is made, whether in the CNMI, Guam or the fifty states. The incentive to revoke the Subchapter S election in profitable years may be greater in the CNMI, but that does

---

3. Again, the Third Circuit's discussion of section 932 is not relevant to this case, since it involved the Virgin Islands, a U.S. possession. *See Great Cruz Bay*, 495 F.2d at 306.

not render its effect manifestly incompatible with the Code as it existed in 1980.[4]

■ We read section 601(c)'s "manifestly incompatible" provision more narrowly than the Director or the district court. We construe that provision as giving the court the flexibility to avoid results that are absurd on their face or that lead to internal contradictions in the application of the Code and Covenant. For example, section 935(a)(3) provides that "[t]his section shall apply to any individual for the taxable year who ... has income derived from Guam for the taxable year and is a citizen or resident of the United States." Applying the Code and the Covenant's mirroring provisions would allow us to substitute "CNMI" for "Guam" and also for "the United States." But doing so would rob the section of all meaning. To make sense of the section, one would substitute CNMI only for Guam. By contrast, where the alleged incompatible effects do not derive from some absurdity in the interposition of language, but flow from the very provision Congress has enacted or approved, that is a policy judgment best left to Congress to correct if it sees fit to do so. There is nothing "manifestly incompatible" in allowing the words of Congress to operate according to their natural and ordinary meaning.

### Conclusion

The judgment of the district court is reversed, and the case is remanded with instructions to enter judgment for Mr. and Mrs. Holmes.

---

**4.** We note that the incentive for using Subchapter S election is greatly lessened after 1982, when Congress severely limited the ability of such a corporation to pass through losses to its shareholders. *See* I.R.C. § 1366(d) (West Supp. 1986).