DEBRA F. PREECE AND DAVID K. PREECE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17010-89.          Filed December 5, 1990.

*John A. Townsend,* for the petitioners.
*James M. Kamman* and *Christopher D. Hatfield,* for the respondent.

## OPINION

NIMS, *Chief Judge:* This matter is before the Court on petitioners' motion for summary judgment pursuant to Rule 121. (Unless otherwise indicated, section references are to the Internal Revenue Code as amended and in effect for the

year at issue. Rule references are to the Tax Court Rules of Practice and Procedure.)

This case involves the question of whether the so-called mirror code of the Commonwealth of the Northern Mariana Islands (CNMI) requires a holding that petitioners, U.S. citizens, were residents of CNMI in 1985 and therefore not subject to U.S. income tax. Central to this question is the resolution of whether the substantial presence test of section 7701(b)(3)(A) provides the standard for determining the residency of U.S. citizens for purposes of section 935, or whether the facts and circumstances test of sections 1.871-2 through 1.871-5, Income Tax Regs., continues to be applicable.

## Factual Background

The following statement of facts is based on an affidavit of Debra F. Preece attached to petitioners' motion for summary judgment. The facts so stated are solely for the purpose of deciding petitioners' motion for summary judgment and for no other purpose.

At all relevant times, Debra and David Preece (petitioners) were husband and wife. At the time the petition was filed, petitioners resided in Spring, Texas. Debra Preece owned approximately 9 percent of the stock of Diet Center, Inc. (DCI). DCI was a family-owned corporation, organized by her parents in the early 1970s. In January 1985, petitioners attended a family meeting and were informed that DCI might be sold. Petitioners were further advised that establishing residency in CNMI would substantially reduce the income taxes arising from the sale of the DCI stock.

In March 1985, petitioners moved to Saipan, CNMI. Petitioners state that the principal motivating factor for the move to CNMI was the expected tax savings associated with the CNMI 95-percent territorial income tax rebate for CNMI-source income. After arriving in CNMI, petitioners rented an apartment, enrolled their children in school, purchased a car, opened bank accounts, registered to vote, obtained driver's licenses, and involved themselves in a local church.

On April 1, 1985, petitioners sold the DCI stock by executing a stock transfer and delivering the stock certifi-

cate to an attorney in CNMI. Petitioners realized proceeds from the sale of the stock in the amount of $5,258,840.

On April 14, 1986, petitioners filed a joint income tax return for 1985 with the Division of Revenue and Taxation in CNMI, reporting the proceeds from the sale of the stock as CNMI-source income. Petitioners remained in CNMI until July 1986, at which time they returned to the United States.

On April 11, 1989, respondent issued a statutory notice of deficiency to petitioners determining that petitioners improperly failed to file Federal individual income tax returns for 1985. On July 11, 1989, petitioners filed a timely petition challenging respondent's determination. Petitioners allege in their petition that they were residents of CNMI and, pursuant to section 935(b), properly filed their income tax returns with CNMI in the year at issue. Petitioners further allege that they were relieved of the liability to file Federal income tax returns by virtue of section 935(c)(3).

## Summary Judgment

On June 1, 1990, petitioners filed a motion for summary judgment with a supporting memorandum and affidavits. On July 13, 1990, respondent filed a notice of objection with a memorandum and affidavit in support of the notice of objection. Petitioners filed a reply memorandum on July 23, 1990. A hearing was held on July 25, 1990, to consider petitioners' motion for summary judgment, which the Court then took under advisement.

Petitioners' primary contention is that the substantial presence test of section 7701(b)(3)(A) (the substantial presence test), read in the context of CNMI's mirror code, provides the standard for determining the residency of U.S. citizens for purposes of section 935. Petitioners contend that this Court must find as a matter of law that they were residents of CNMI for purposes of section 935 because they were present in CNMI in excess of 183 days in the year at issue. In the alternative, petitioners claim that the undisputed facts support a finding that they were residents of CNMI under a facts and circumstances test as described in sections 1.871-2 through 1.871-5, Income Tax Regs. (the facts and circumstances test).

It is respondent's position that a determination of residency of U.S. citizens for purposes of section 935 is to be made under the facts and circumstances test, not the substantial presence test. Respondent further argues that summary judgment is inappropriate with respect to the facts and circumstances test because material facts are in dispute.

Under Rule 121(b), summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." *Zaentz v. Commissioner,* 90 T.C. 753, 754 (1988); *Naftel v. Commissioner,* 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that no genuine issue exists as to any material fact and that he is entitled to judgment on the substantive issues as a matter of law. *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982). In deciding whether to grant summary judgment, we view the factual material and inferences drawn therefrom in the light most favorable to the party opposing the motion. *Naftel v. Commissioner,* 85 T.C. at 529.

The parties' disagreement over the proper test for determining petitioners' residency for purposes of section 935 is ripe for partial summary adjudication. Rule 121(b). Respondent admits for purposes of the pending motion that petitioners were present in CNMI for 183 days during 1985. Petitioners in turn admit that they were present in the United States for 365 days in 1983, 365 days in 1984, and in excess of 31 days in 1985.

## Discussion

We will review CNMI's system of taxation, as well as sections 935 and 7701(b)(3)(A), before addressing the arguments of the parties.

### CNMI

Prior to 1975, the Northern Mariana Islands were a part of the United Nations Trust Territory of the Pacific Islands, administered by the United States. See Trusteeship Agreement for the Former Japanese Mandated Islands, July 18,

1947, United Nations-United States, 61 Stat. 3301, T.I.A.S. No. 1665; H.J. Res. 233, 61 Stat. 397 (1947). In February 1975, the United States and the people of the Northern Mariana Islands entered into a "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America" (the covenant). The covenant was ratified by a plebiscite in the Northern Mariana Islands on June 17, 1975, and formally approved by Congress on March 24, 1976. See Pub. L. 94-241, 90 Stat. 263 (1976), reprinted in 48 U.S.C. section 1681 note, at 209 (1988).

In January 1978, section 601(a) of the covenant was given effect. Proc. No. 4534, 42 Fed. Reg. 56,593 (1977). Section 601(a) provided that the income tax laws of the United States would be applied in the Northern Mariana Islands as a local territorial income tax. The covenant provided that the taxation system would function in the same manner as the system adopted in Guam.

Section 31 of the Organic Act of Guam, Pub. L. 81-630, 64 Stat. 392 (1950), as amended, Pub. L. 85-688, 72 Stat. 681 (1958), provided that the Internal Revenue Code would be applied as a local territorial income tax in Guam. However, the tax laws would be applied in a mirror context by substituting the word "Guam" for "United States" where appropriate. See 48 U.S.C. section 1421i(e) (1988). A jurisdiction employing a mirror code generally treats the United States in the same manner as the United States treats the implementing jurisdiction. *Flores v. Government of Guam,* 444 F.2d 284, 287 (9th Cir. 1971).

Consistent with the adoption of a mirror revenue code in CNMI, section 601(c) of the covenant provided that references in the Internal Revenue Code to Guam were deemed to refer to CNMI where not otherwise distinctly expressed or manifestly incompatible with the intent thereof or of the covenant. Full implementation of the CNMI mirror revenue code was achieved effective January 1, 1985. See section 3 of Pub. L. 98-213, 97 Stat. 1459 (1983). (For purposes of clarity, the word "CNMI" will be inserted next to the word "Guam" throughout the remainder of this opinion where appropriate.)

*Section 935*

Prior to 1972, provisions of the Internal Revenue Code required taxpayers deriving income from both the United States and Guam to file income tax returns with both jurisdictions. Frequently, foreign tax credits would offset much or all of the tax due in one or the other of the two jurisdictions. To eliminate the burdens associated with the filing of two income tax returns, Congress enacted section 935. (Section 935 was codified by section 1(a) of Pub. L. 92-606, 86 Stat. 1494, effective for taxable years beginning after December 31, 1972. Section 935 was subsequently repealed by section 1272(d)(2) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2594, for taxable years beginning after December 31, 1986.)

Section 935 provided in pertinent part as follows:

SEC. 935(a). APPLICATION OF SECTION.—This section shall apply to any individual for the taxable year who—

(1) is a resident of Guam [CNMI],

(2) is a citizen of Guam [CNMI] but not otherwise a citizen of the United States,

(3) has income derived from Guam [CNMI] for the taxable year and is a citizen or resident of the United States, or

\*　　\*　　\*　　\*　　\*　　\*　　\*

(b) FILING REQUIREMENT.—

(1) IN GENERAL.—Each individual to whom this section applies for the taxable year shall file his income tax return for the taxable year—

(A) with the United States, if he is a resident of the United States,

(B) with Guam [CNMI], if he is a resident of Guam [CNMI], and

(C) if neither subparagraph (A) nor subparagraph (B) applies—

(i) with Guam [CNMI], if he is a citizen of Guam [CNMI] but not otherwise a citizen of the United States, or

(ii) with the United States, if clause (i) does not apply.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) EXTENT OF INCOME TAX LIABILITY.—In the case of any individual to whom this section applies for the taxable year—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(3) such individual is hereby relieved of liability for income tax for such year to the jurisdiction (the United States or Guam [CNMI]) other than the jurisdiction with which he is required to file under subsection (b).

In sum, section 935 required the filing of a single return and the payment of tax on income from all sources with either the United States or Guam depending on the residency of the taxpayer if there was residency in either jurisdiction. The citizenship of the taxpayer comes into play only in the absence of residency in one of the two jurisdictions. See H. Rept. 92-1479, 1972-2 C.B. 760, 761-762.

Section 601(b) of the covenant expressly adopted the single filing system of section 935 for use in CNMI. Thus, citizens of the United States residing in CNMI would be relieved of the liability of filing income tax returns in the United States and instead would file income tax returns with CNMI.

Section 935 did not provide specific definitions for residency and citizenship. However, the legislative history states that "The rules under present law which are used to determine residency of individuals" are to apply for purposes of determining residency in the United States or Guam [CNMI]. H. Rept. 92-1479, *supra*, 1972-2 C.B. at 762. At the time of the enactment of section 935, the test used to determine residency was a facts and circumstances test set forth in sections 1.871-2 through 1.871-5, Income Tax Regs. The legislative history also states, in effect, that for purposes of section 935 a citizen of Guam who is not otherwise a citizen of the United States is an individual born or naturalized in Guam (even though by virtue thereof he is also a citizen of the United States.) H. Rept. 92-1479, *supra*, 1972-2 C.B. at 762. See section 4 of the Organic Act of Guam, Pub. L. 81-630, 64 Stat. 384 (1950); H. Rept. 92-1479, *supra*, 1972-2 C.B. at 761 n. 3.

Consistent with the foregoing, the Secretary prescribed section 1.935-1(a)(3), Income Tax Regs., which provided:

*(3) Determination of residence and citizenship.* For purposes of this section, determinations of residence and citizenship for a taxable year shall be made (except as provided to the contrary in paragraph (d)(1) and (2) of this section) as of the close of the taxable year. A citizen of the United States is any individual who is a citizen within the meaning of paragraph (c) of section 1.1-1, except that the term does not include an individual who is a citizen of Guam [CNMI] but not otherwise a citizen of the United States. An individual who is a citizen of Guam [CNMI] but not otherwise a citizen of the United States is any individual who has

become a citizen of the United States by birth or naturalization in Guam [CNMI]. *Whether an individual is a resident of Guam [CNMI] or a resident of the United States shall generally be determined by applying to the facts and circumstances in each case the principles of sections 1.871-2 through 1.871-5 relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual.* * * * [Emphasis added.]

Thus, for purposes of section 935, residency determinations would be made by examining the facts and circumstances of the particular case.

To ensure that the mirror system would function as intended, section 935(c) provided that, except for purposes of section 935, the United States and Guam [CNMI] would be treated as one jurisdiction (in both a geographical and governmental sense). See section 1.935-1(c)(1)(i), Income Tax Regs. The House Report reveals that this provision would, among other things, prevent a U.S. taxpayer from claiming a foreign tax credit for his Guam [CNMI] source income. H. Rept. 92-1479, *supra,* 1972-2 C.B. at 762.

*Section 7701(b)*

Section 7701(b) was codified by section 138 of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 672, effective for taxable years beginning after December 31, 1984. Section 7701(b) provides in pertinent part:

SEC. 7701(b). DEFINITION OF RESIDENT ALIEN AND NONRESIDENT ALIEN.—

(1) IN GENERAL.—For purposes of this title * * *

(A) RESIDENT ALIEN.—An alien individual shall be treated as a resident of the United States with respect to any calendar year if (and only if) such individual meets the requirements of clause (i), (ii), or (iii):

\* \* \* \* \* \* \*

(ii) SUBSTANTIAL PRESENCE TEST.—Such individual meets the substantial presence test of paragraph (3).

\* \* \* \* \* \* \*

SUBSTANTIAL PRESENCE TEST.—

(A) IN GENERAL.—Except as otherwise provided in this paragraph, an individual meets the substantial presence test of this paragraph with respect to any calendar year (hereinafter in this subsection referred to as the "current year") if—

(i) such individual was present in the United States on at least 31 days during the calendar year, and

(ii) the sum of the number of days on which such individual was present in the United States during the current year and the 2 preceding calendar years (when multiplied by the applicable multiplier determined under the following table) equals or exceeds 183 days:

| In the case of days in: | The applicable multiplier is: |
| --- | --- |
| Current year | 1 |
| 1st preceding year | 1/3 |
| 2nd preceding year | 1/6 |

The substantial presence test of section 7701(b)(3)(A) provides an objective test for determining whether a citizen of France, for example, is a resident of the United States. Generally, an alien will be considered a resident of the United States with respect to any year in which the alien is present in the United States at least 31 days during the current year and a sum of 183 days, calculated pursuant to a weighted formula, during the current year and the 2 preceding years. Section 7701(b)(3)(A) was intended to replace the more complex facts and circumstances test of section 1.871-2, Income Tax Regs., for purposes of determining whether an alien was a resident of the United States. H. Rept. 98-432, vol. 1 at 222 (1983).

Petitioners maintain that section 7701(b)(3)(A) provides the standard for determining whether they were residents of CNMI in the year at issue. Specifically, petitioners contend that: (1) Section 7701(b)(3)(A) applies within the context of CNMI's mirror code to determine whether aliens are residents of CNMI; (2) U.S. citizens are aliens of CNMI; and (3) section 7701(b)(3)(A) was intended to repeal the facts and circumstances test for determining residence for purposes of the single filing rule of section 935.

Respondent does not dispute that section 7701(b)(3)(A) may be applied to determine whether an alien in the traditional sense, e.g., a citizen of France, is a resident of CNMI. Respondent argues, however, that section 7701(b)(3)(A) does not apply to determine whether U.S. citizens, such as petitioners, are residents of CNMI. Respondent argues that: (1) U.S. citizens are not aliens of CNMI; and (2) in enacting section 7701(b), Congress did not intend

to repeal either section 1.935-1(a)(3) or section 1.871-2, Income Tax Regs., to the extent those provisions mandated that residency of U.S. citizens in Guam [CNMI] would be determined under the facts and circumstances test.

Petitioners cite *Great Cruz Bay, Inc., St. John, Virgin Islands v. Wheatley,* 495 F.2d 301 (3d Cir. 1974), and the brief filed by the Government in *Manning v. Blaz,* 479 F.2d 333 (9th Cir. 1973), in support of their contention that U.S. citizens are aliens of CNMI.

In *Great Cruz Bay,* a corporation organized in the Virgin Islands, with U.S. citizens as shareholders, attempted to make a subchapter S election. The Government argued that a subchapter S election was not available to the corporation by virtue of section 932(a). (The Virgin Islands was a mirror code jurisdiction.) At the time, section 932(a) provided:

SEC. 932(a). GENERAL RULE.—Any individual who is a citizen of any possession of the United States (but not otherwise a citizen of the United States) and who is not a resident of the United States shall be subject to taxation under this subtitle in the same manner and subject to the same conditions as in the case of a nonresident alien individual. This section shall have no application in the case of a citizen of Puerto Rico.

Applying section 932(a) under the Virgin Islands mirror code, the Third Circuit held that the corporation did not qualify for the subchapter S election because the shareholders from the United States were nonresident aliens of the Virgin Islands. *Great Cruz Bay Inc., St. John, Virgin Islands v. Wheatley, supra* at 306.

In so holding, the Third Circuit declined to follow a holding to the contrary by the Ninth Circuit on parallel facts in *Manning v. Blaz, supra,* involving the Guamanian mirror code. However, the Third Circuit noted that shortly before the Ninth Circuit considered the appeal in the *Manning* case, Congress enacted a statute (presumably amended section 932(a)) which eliminated for Guam the problem with which the Third Circuit was concerned in *Great Cruz Bay.* The *Manning* court held that a corporation organized in Guam with U.S. citizens as shareholders was entitled to make a subchapter S election since the U.S. resident shareholders were not nonresident aliens of Guam. *Manning v. Blaz, supra* at 334-335.

Petitioners' reliance on *Great Cruz Bay* and the Government's position in *Manning* is misplaced. In particular, section 932(a) was amended (as a part of the legislation enacting section 935) to provide that section 932(a) "shall have no application in the case of a citizen of * * * Guam [CNMI]." See H. Rept. 92-1479, *supra*, 1972-2 C.B. at 764. (Section 1(f)(2) of Pub. L. 92-606, 86 Stat. 1497, amended section 932(a) effective with respect to taxable years beginning after December 31, 1972. As was the case with section 935, section 932 was repealed by the Tax Reform Act of 1986. See section 1272(d)(1) of Pub. L. 99-514, 100 Stat. 2594.) In light of the amendment of section 932(a), and by applying CNMI's mirror code, neither *Great Cruz Bay* nor the Government's position in *Manning* supports petitioners' contention that a citizen of the United States is an alien of CNMI. See *Holmes v. Dir. of Rev. & Tax., Government of Guam*, 827 F.2d 1243, 1245 (9th Cir. 1987).

The Ninth Circuit in *Holmes* held that a CNMI subchapter S corporation had no nonresident aliens among its shareholders who included residents of the continental United States, Guam, and CNMI. To reach this result, the court applied to the Guamanian mirror code that part of section 1.871-2(a), Income Tax Regs., which provides that "the term 'nonresident alien individual' means an individual whose residence is not within the United States, and who is not a citizen of the United States." The court held that:

By its terms, the regulation excludes the corporation's U.S. resident shareholder from the definition of nonresident alien and, through the mirroring provisions of the Code and Covenant, it also excludes the Guamanian and CNMI resident shareholders. [827 F.2d at 1245.]

We observe that in deciding *Holmes* under Guamanian law, the circuit court applied U.S. law, as expressed in the quoted regulation, to a U.S. citizen shareholder (and a resident of the continental United States) and applied the Guamanian mirror code to shareholders who were residents of Guam and CNMI, respectively. We also note that the provisions of the regulation, which the circuit court applied to a 1980 tax year, are almost identical to those of section 7701(b)(1)(B) which, as noted above (*supra* p. 601), was enacted effective for taxable years beginning after December 31, 1984. Whether the circuit court would have applied

the statute in the same way it applied the regulation can only remain a subject for speculation, in which we decline to engage.

Petitioners next assert that U.S. citizens are aliens of CNMI because the United States and Guam [CNMI] were treated as separate jurisdictions for purposes of applying section 935. Petitioners rely on section 935(c) which provided in pertinent part:

> SEC. 935(c). EXTENT OF INCOME TAX LIABILITY.—In the case of any individual to whom this section applies for the taxable year—
>
> (1) for purposes of so much of this title (*other than this section and section 7654*) as relates to the taxes imposed by this chapter, the United States shall be treated as including Guam [CNMI], [emphasis added]
>
> (2) for purposes of the Guam [CNMI] territorial income tax, Guam [CNMI] shall be treated as including the United States, * * * .

See also section 1.935-1(c)(1)(i), Income Tax Regs.

Petitioners suggest that because the United States and Guam [CNMI] were treated as separate jurisdictions for purposes of section 935, the citizens of one jurisdiction were aliens of the other jurisdiction. From an abstract, definitional perspective, petitioners' argument has appeal. However, a definitional approach to the question ignores the fact that section 935(c) was not codified for the purpose of classifying U.S. citizens as aliens of Guam [CNMI]. Rather, segregation of the United States and Guam [CNMI] was necessary in order to craft and apply standards for determining the citizenship and residence of taxpayers so that the single filing provisions could be implemented in an orderly fashion.

Specifically, the two jurisdictions had to be considered independently in order to segregate for single filing purposes citizens born or naturalized in Guam [CNMI] who, by virtue thereof, are also citizens of the United States. Sec. 1.935-1(a)(3), Income Tax Regs. Likewise, the two jurisdictions had to be considered independently to evaluate the factors pertinent to a facts and circumstances analysis for determining residency. Sec. 1.935-1(a)(3), Income Tax Regs. Thus, while the United States and Guam [CNMI] were treated separately for purposes of section 935, the section was not intended to classify U.S. citizens as aliens of Guam

[CNMI] nor does the House Report support such a classification. In this light, petitioners cannot rely on section 935(c) to establish that U.S. citizens are aliens of CNMI.

As we see it, ambiguities inherent in the application of CNMI's mirror system of taxation preclude a purely definitional approach to the issue at hand. Such an approach does not ensure that the provisions in question will be interpreted in a practical way. In construing statutes, the object and policy of the whole law are to be given effect. See *Fehlhaber v. Commissioner,* 94 T.C. 863, 865-866 (1990). Because the statutory language is not dispositive as to whether U.S. citizens are aliens of CNMI, see *United States v. Goodyear Tire and Rubber Co.,* 493 U.S. 132, ____ (1989), petitioners must establish that section 7701(b)(3)(A) was intended to apply to U.S. citizens in the context of CNMI's mirror code.

Petitioners contend that the substantial presence test of section 7701(b)(3)(A) was intended to repeal the facts and circumstances test for purposes of determining residency under section 935. Petitioners do not cite any authority within section 7701(b) or the regulations to support their contention. Petitioners do assert, however, that the lack of any mention of section 935 in the legislative history of section 7701(b) shows that Congress intended that the substantial presence test was to apply for purposes of section 935. Petitioners contend that Congress implicitly repealed a facts and circumstances test when section 7701(b)(3)(A) was enacted.

Respondent counters that the lack of any reference to section 935 in the legislative history to section 7701(b) supports his position that Congress did not intend to abandon a facts and circumstances test as the standard for determining residency of U.S. citizens for purposes of section 935. We agree with respondent.

First, we return briefly to the legislative history of section 935. We find it significant that the House Report discussing the enactment of section 935 makes specific reference to application of "the rules under *present law*" to determine questions of residency. H. Rept. 92-1479, *supra,* 1972-2 C.B. at 762. (Emphasis added.) As previously noted, when section 935 was enacted, the facts and circumstances

test controlled determinations of residency. Consistent with legislative intent, section 1.935-1(a)(3), Income Tax Regs., provides that the facts and circumstances test is to be applied to determine residency for purposes of section 935.

In contrast, there is no mention of section 935 in the legislative history of section 7701(b). Rather, the Conference Report merely states:

> The conference agreement allows the Secretary to prescribe regulations to carry out the purpose of this subsection. In particular, the conferees understand that regulations may be necessary to coordinate U.S. taxing jurisdiction with the taxing jurisdictions of U.S. possessions the basis of whose tax law is the Internal Revenue Code. [H. Rept. 98-861 (Conf.), at 968 (1984), 1984-3 C.B. (Vol. 2) 222.]

In our view, the legislative history of section 7701(b) suggests that Congress at least implicitly left open the question of the applicability of the facts and circumstances test to the extent that the test was to be utilized to determine the residency of U.S. citizens for purposes of section 935. This is particularly apparent in light of Congress' express adoption of the test "under present law" in the legislative history of section 935. Consequently, it is reasonable to presume that the facts and circumstances test, as applied for purposes of section 935, was not repealed by implication. See 1A Sutherland, Statutory Construction, section 23.10 (4th ed. 1985).

We also note that petitioners' view of the application of the substantial presence test is contrary to the anti-abuse policy reflected in section 7701(b)(10). Section 7701(b)(10) provides that an alien who is a resident for 3 consecutive years and interrupts his U.S. residency for fewer than 3 years will be subject to tax under section 877 during the interim period of nonresidence. Section 7701(b)(10) was enacted to alleviate concerns that under the substantial presence test long-time U.S. residents would leave the United States for a short period, dispose of assets free of Federal taxes, and then resume their residency in the United States. See H. Rept. 98-861 (Conf.), at 967 (1984), 1984-3 C.B. (Vol. 2) 221.

Contrary to the anti-abuse policy articulated in section 7701(b)(10), petitioners admit that the principal motivating factor for moving to CNMI was to obtain the tax savings

associated with the CNMI 95-percent territorial income tax rebate for CNMI source income. Petitioners moved to CNMI during 1985 and remained in CNMI only long enough to satisfy the mechanical test for residency under section 7701(b)(3)(A). In 1986, petitioners moved back to the United States. Petitioners effectively concede that they were attempting to use the substantial presence test of section 7701(b)(3)(A) to manipulate their residency for tax-avoidance purposes.

Congress further restricted the scope of section 7701(b)(3)(A) by stating:

> The Committee, in changing the definition of U.S. residence for U.S. tax purposes, is not changing the definition of foreign residence for U.S. tax purposes. Therefore, the term "bona fide resident of a foreign country" for the purposes of the tax benefits for foreign earned income will retain its current meaning (sec. 911(d)(1)(A)). Therefore, a U.S. citizen who is present in a foreign country for 183 days during a calendar year will not automatically be a "bona fide resident" of that country. [H. Rept. 98-432, vol. 1 at 227 (1983).]

In sum, the House Report states that section 7701(b) does not apply for purposes of determining foreign residency. A facts and circumstances test was retained for purposes of determining residency under section 911(d)(1)(A). This shows that in enacting section 7701(b) Congress did not intend that the substantial presence test would replace a facts and circumstances test for all purposes.

By retaining the facts and circumstances test for determining the residency of a U.S. citizen present in a foreign country, Congress made clear that U.S. citizens would be subjected to a stricter scrutiny than that contemplated for aliens under the substantial presence test. This stricter scrutiny for U.S. citizens living abroad further ensured that the substantial presence test would not be used for tax avoidance purposes. Consistent with the treatment of U.S. citizens living abroad, and absent any indication to the contrary, we conclude that Congress likewise intended that the facts and circumstances test would continue to be applied in the case of U.S. citizens attempting to establish residency in a U.S. territory or possession.

Finally, we reject petitioners' contention that it is inequitable to apply one standard to determine the residency of

aliens present in the United States and another to determine the residency of U.S. citizens present in CNMI. Petitioners ignore the divergent interests of the United States in taxing aliens present in the United States as opposed to U.S. citizens residing outside of the United States. As noted by this Court in *Nelson v. Commissioner*, 30 T.C. 1151, 1154 (1958):

Exemptions as well as deductions are matters of legislative grace, and a taxpayer seeking either must show that he comes squarely within the terms of the law conferring the benefit sought. * * * [I]t is quite possible that an alien may be found to be a resident of the United States while a citizen may be found not to have been a resident of a foreign country or countries, under very similar facts, the ultimate result in both cases consisting of the denial of a special benefit, i.e., exemption from income tax, not clearly shown to be applicable. * * *

In light of the foregoing, we are compelled to conclude that petitioners cannot utilize the substantial presence test to establish residency in CNMI. Rather, the facts and circumstances test, referred to in the legislative history to section 935 and in section 1.935-1(a)(3), Income Tax Regs., provides the standard for determining whether petitioners were residents of CNMI in the year at issue.

Petitioners' alternative contention that they were residents of CNMI under the facts and circumstances test does not lend itself to summary adjudication. Section 1.871-2(b), Income Tax Regs., provides in pertinent part:

Sec. 1.871-2(b). *Residence defined.* An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his *intentions* with regard to the length and nature of his stay. * * * [Emphasis added.]

The regulation provides that an alien's residence is determined by examining his intention with regard to the length and nature of his stay. An alien's intention with regard to the length and nature of his stay is determined by considering the facts and circumstances of the case. *Sochurek v. Commissioner*, 300 F.2d 34, 37-38 (7th Cir. 1962); *Schoneberger v. Commissioner*, 74 T.C. 1016, 1022-1023 (1980). In *Shiosaki v. Commissioner*, 61 T.C. 861, 863-864 (1974), we stated:

Ordinarily, summary judgment should not be granted in a case in which intent is an issue. [Citation omitted.] A conclusion as to [a taxpayer's] intent should not be reached without the benefit of a trial in which his demeanor can be observed and his credibility can be weighed.

Thus, the issue of whether petitioners were actual residents of CNMI under the facts and circumstances test is not appropriate for summary adjudication.

To reflect the foregoing,

*An appropriate order will be issued.*