106 T.C. No. 19

UNITED STATES TAX COURT

BOYD GAMING CORPORATION, f.k.a. THE BOYD GROUP
AND SUBSIDIARIES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CALIFORNIA HOTEL AND CASINO AND SUBSIDIARIES, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3433-95, 3434-95.          Filed May 22, 1996.

Ps provided "free" meals to their employees in private cafeterias located on their business premises. R determined that sec. 274(n)(1), I.R.C., limits Ps' deduction for the cost of these meals. R moves for partial summary judgment in her favor. Ps object to R's motion, arguing that they may deduct 100 percent of their cost under the de minimis fringe benefit exception of sec. 274(n)(2)(B), I.R.C., and that the applicability of this exception is a factual determination that has yet to be made. Ps also move for partial summary judgment in their favor, arguing that they may deduct 100 percent of the meals' cost under the bona fide sale exception of sec. 274(e)(8), I.R.C. Held: Ps may deduct 100 percent of the meals' cost if they are within the de minimis fringe benefit exception of sec. 274(n)(2)(B), I.R.C., and whether they are within this exception is an unanswered question of fact. Held, further: Ps' provision of the meals is not within sec. 274(e)(8), I.R.C.

Thomas P. Marinis, Jr. and J. Barclay Collins III, for petitioners.

Paul L. Dixon, for respondent.


OPINION


LARO, Judge:  These consolidated cases are before the Court on cross-motions for partial summary judgment.[1]  Respondent moves for partial summary judgment in her favor, arguing that section 274(n)(1) limits petitioners' deductions for the cost of "free" food and beverages that they provided to their employees on petitioners' business premises.[2]  Petitioners object to respondent's motion, arguing that a genuine issue of fact exists as to the applicability of an exception to section 274(n)(1); namely, whether the food and beverages are a de minimis fringe benefit under section 274(n)(2)(B).  Petitioners also move for partial summary judgment in their favor, arguing that section 274(n)(1) does not apply because petitioners "sold * * * [the food and beverages to their employees] in a bona fide transaction for an adequate [and full] consideration in money or money's worth".[3]  See sec. 274(e)(8), (n)(2)(A).  Respondent replied to

_____

[1] On Nov. 7, 1995, the Court granted the unopposed motion of respondent to consolidate the two cases for purposes of trial, briefing, and opinion.

[2] Respondent supports her motion with only the pleadings.

[3] Petitioners' cross-motion is supported by the affidavit of
(continued...)

petitioners' notice of objection, and she objected to petitioners' cross-motion.[4]

We hold that petitioners may deduct 100 percent of the cost of the food and beverages provided to their employees, if the food and beverages are within the de minimis fringe benefit exception of section 274(n)(2)(B). Whether petitioners are within this exception is a factual determination that is yet to be made. We also hold that petitioners' provision of the food and beverages is not within section 274(e)(8).

Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. We refer to Boyd Gaming Corp., f.k.a. the Boyd Group and Subsidiaries, and California Hotel and Casino and Subsidiaries as Boyd and CHC, respectively.

### Background[5]

Boyd and CHC are Nevada corporations whose principal offices were in Las Vegas, Nevada, when they petitioned the Court. For its taxable year ended June 30, 1988 (the 1987 taxable year), CHC was the common parent of an affiliated group of corporations that

---

(...continued)
one of their senior vice presidents.

[4] Respondent's objection is unaccompanied by supporting affidavits.

[5] The "facts" presented in this Opinion are stated solely for purposes of deciding the motion and are not findings of fact for this case. Fed. R. Civ. P. 52(a); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

filed a consolidated Federal income tax return. CHC's affiliated group in its 1987 taxable year included: (1) Mare-Bear, Inc., doing business as Stardust Hotel & Casino (Stardust) and (2) Sam-Will, Inc., doing business as Fremont Hotel & Casino (Fremont). CHC sometimes did business as Sam's Town Hotel & Gambling Hall (Sam's Town).

For its taxable year ended June 30, 1989 (the 1988 taxable year), Boyd was the common parent of an affiliated group of corporations that filed a consolidated Federal income tax return. Boyd's affiliated group in its 1988 taxable year included: (1) CHC, which sometimes did business as Sam's Town, (2) Mare-Bear, Inc., doing business as Stardust, and (3) Sam-Will, Inc., doing business as Fremont.

At all times relevant herein, CHC, Stardust, Fremont, and Sam's Town (collectively referred to as the Properties) were located in Las Vegas, Nevada. Each of the Properties was a resort complex that had casino, hotel, and restaurant facilities. Some of the Properties had convention or amusement facilities. Each of the Properties had an employee cafeteria that was located on its premises. The cafeterias (Cafeterias) were separate from the public restaurants that were located on the Properties. The Cafeterias were used by petitioners to serve hot meals, cold foods, and snacks (collectively referred to as the meals) to only their employees.

Petitioners provided the meals to all of their on-duty employees, except for a small group of individuals who were

allowed to eat in designated areas of the Properties' public restaurants, during the employees' work shifts. Petitioners provided the meals without any out-of-pocket cost to the employees. Petitioners provided the meals for a variety of operational reasons. Petitioners' provision of the meals was not discriminatory in favor of highly compensated employees.

Most, if not all, of the casinos in Las Vegas provided meals to their employees during the relevant years. In order to attract and keep employees, petitioners offered packages of compensation and benefits that were competitive in the marketplace. Meal benefits during an employee's shift were included in commonplace packages.[6] In consideration for the meal benefits, petitioners were able to require their employees to stay on the Properties' premises during their entire shift. An employee who left the premises during his or her shift, without authorization, was subject to disciplinary action up to and including discharge.

For the subject years, the Commissioner disallowed 20 percent of the deductions that petitioners reported for the cost of their employees' meals. According to the notices of deficiency, section 274(n) prohibits petitioners from deducting 20 percent of the meals' cost. In its petition, CHC alleges that it did not deduct 20 percent of the meals' cost for its 1987 taxable year, and that it was entitled to do so.

## Discussion

---

[6] Sometimes, meal benefits were required by union contracts.

The issue at hand is one of first impression.  We must decide whether petitioners can deduct the full cost of the meals that they provided to their employees on their premises, or, alternatively, whether section 274(n)(1) limits their deduction to 80 percent of the meals' cost.  Petitioners argue for the former, stating that section 274(n)(1) does not limit their deduction because their employee meals are:  (1) De minimis fringe benefits under sections 132(e) and 274(n)(2)(B), or (2) goods sold in a bona fide transaction for an adequate and full consideration in money or money's worth under section 274(e)(8).  Respondent argues for the latter, stating that none of the exceptions to section 274(n)(1) apply to the facts at hand because petitioners provided the meals to their employees without charge.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. Kroh v. Commissioner, 98 T.C. 383, 390 (1992); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974).  The concept of summary judgment is specifically recognized by this Court and is deeply ingrained in our procedural rules.  Rule 121(a) provides that either party may move for summary judgment in its favor upon any or all parts of the legal issues in controversy.  When either party makes such a motion, the opposing party must file "An opposing written response, with or without supporting affidavits, * * * within such period as the Court may direct."  Rule 121(b). A decision on the merits of a taxpayer's claim will then be

rendered by way of summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Id.

Because summary judgment decides an issue against a party without the benefit of a trial, the Court grants such a remedy cautiously and sparingly, and only after carefully ascertaining that the moving party has met the requisite criteria. Associated Press v. United States, 326 U.S. 1, 6 (1945); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982).  The Court will not resolve disagreements over material factual issues in a summary judgment proceeding.  Espinoza v. Commissioner, supra at 416; Matson Navigation Co. v. Commissioner, 67 T.C. 938, 951 (1977).  A fact is material if it "tends to resolve any of the issues that have been properly raised by the parties."  10A Wright et al., Federal Practice and Procedure:  Civil, sec. 2725, at 93 (2d ed. 1983).  The moving party must prove that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Kroh v. Commissioner, supra at 390; Preece v. Commissioner, 95 T.C. 594, 597 (1990).

We start our inquiry with the relevant text of section 274(n).[7] <u>Connecticut Natl. Bank v. Germain</u>, 503 U.S. 249, 253-254 (1992); <u>TVA v. Hill</u>, 437 U.S. 153 (1978); <u>United States v. American Trucking Associations</u>, 310 U.S. 534, 543-544 (1940). Section 274(n) provides in part:

> (1) In general.--The amount allowable as a deduction under this chapter for--
>
> (A) any expense for food or beverages, and
>
> \*         \*         \*         \*         \*         \*         \*
>
> shall not exceed 80 percent [8] of the amount of such expense or item which would (but for this paragraph) be allowable as a deduction under this chapter.
>
> (2) Exceptions.--Paragraph (1) shall not apply to any expense if--
>
> (A) such expense is described in paragraph \* \* \* (8) \* \* \* of subsection (e).[9]
>
> (B) in the case of an expense for food or beverages, such expense is excludable from the gross income of the recipient under section 132 by reason of subsection (e) thereof (relating to de minimis fringes),

From this text, we find that the mandate of the Congress is clear.  Petitioners may not deduct the full cost of their

---

[7] Sec. 274(n) was added to the Code on Oct. 22, 1986, as sec. 142(b) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2118.

[8] Sec. 13,209(a) of the Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 312, 469, changed this amount to 50 percent for taxable years beginning after Dec. 31, 1993.

[9] Sec. 274(e)(8) provides an exception for "Expenses for goods or services \* \* \* which are sold by the taxpayer in a bona fide transaction for an adequate and full consideration in money or money's worth."

employees' meals unless the meals are: (1) De minimis fringe benefits under section 132(e) or (2) sold by petitioners in a bona fide transaction for an adequate and full consideration in money or money's worth.

Turning first to the de minimis fringe benefit exception, we find that employee meals provided on a nondiscriminatory basis are a de minimis fringe benefit under section 132(e) if: (1) The eating facility is owned or leased by the employer, (2) the facility is operated by the employer, (3) the facility is located on or near the business premises of the employer, (4) the meals furnished at the facility are provided during, or immediately before or after, the employee's workday, and (5) the annual revenue derived from the facility normally equals or exceeds the direct operating costs of the facility (the revenue/operating cost test). Sec. 132(e)(2); sec. 1.132-7(a), Income Tax Regs.

The parties do not dispute the applicability of this five-prong test, and they do not dispute that the first four prongs have been met. The parties focus on the fifth prong; i.e., the revenue/operating cost test. For purposes of this test, an employer may disregard the cost and revenue for any employee meal that the employer reasonably determines is excludable from gross income under section 119. Sec. 1.132-7(a)(2), Income Tax Regs.[10] Section 119(a)(1) allows an

---

[10] The rule of sec. 1.132-7(a)(2), Income Tax Regs., that disregards the cost and revenue of sec. 119 meals was originally prescribed in sec. 1.132-7T(a)(2), Temporary Income Tax Regs., 50 Fed. Reg. 52309 (Dec. 23, 1985).

employee to exclude from income the value of any meals furnished by an employer for the employer's convenience and on the employer's premises. Commissioner v. Kowalski, 434 U.S. 77, 84 (1977). Employee meals furnished without a charge on the employer's premises are considered to be within section 119 if the employer furnished the meals for a "substantial noncompensatory business reason", the presence of which is a factual determination. Sec. 1.119-1(a)(2)(i), Income Tax Regs. In making this determination, we are guided by section 1.119-1(a)(2)(ii), Income Tax Regs., which lists examples of substantial noncompensatory business reasons. We are also guided by a directive in respondent's regulations that all employee meals are considered furnished for a substantial noncompensatory business reason if the employer: (1) Furnished the meals at its place of business and (2) had a substantial noncompensatory business reason for furnishing the meals to each of substantially all of the employees who were furnished the meals. Sec. 1.119-1(a)(ii)(e), Income Tax Regs.

Respondent argues that petitioners cannot meet the revenue/operating cost test because they earned no revenue on the employee meals. Respondent claims that section 1.132-7(a)(2), Income Tax Regs., applies only when employees pay for their meals, some of which are excludable from gross income under section 132(e) and the rest of which are excludable under section 119. Respondent claims that the Congress intended to allow a full deduction for employee meals only when the meals were

provided in a facility that normally makes an overall profit, and that the Congress did not intend for section 274(n)(2)(B) to apply to meals covered by section 119. Respondent relies primarily on two excerpts from the committee reports to section 274(n)(1). The first excerpt states that "20 percent of an otherwise allowable deduction for food and beverages * * * is disallowed. Similarly, the cost of a meal furnished by an employer to employees on the employer's premises is subject to the rule." S. Rept. 99-313, at 70 (1985), 1986-3 C.B. (Vol. 3) 1, 70; H. Rept. 99-426, at 123 (1985), 1986-3 C.B. (Vol. 2) 1, 123. The second excerpt states that "The bill generally reduces to 80 percent the amount of any deduction otherwise allowable for meal expenses, including meals * * * furnished on an employer's premises to its employees (whether or not such meals are excludable from the employee's gross income under sec. 119)." H. Conf. Rept. 99-841, at II-24 to II-25 (1986), 1986-3 C.B. (Vol. 4) 1, 24-25. Respondent also relies on the fact that section 274(e)(1) refers to food and beverages furnished on an employer's business premises primarily for its employees. Respondent argues that section 274(n)(2) would have referred to section 274(e)(1), had the Congress intended to except employee meals from the limitation of section 274(n)(1).

We disagree with respondent's broad reading of section 274(n)(1). In support of her reading, respondent refers us to two excerpts of legislative history. Respondent takes both excerpts out of their context. The first excerpt is listed under

the caption "in general".  Immediately thereafter, under the caption "Exceptions to percentage reduction rule", the reports state that "The bill provides certain exceptions to the applicability of the percentage reduction rule.  First, the cost of a meal * * * is fully deductible if the full value * * * is excludable under section 132, pursuant to either the subsidized eating facility exclusion or the exclusion for de minimis fringe benefits."  S. Rept. 99-313, supra at 71, 1986-3 C.B. (Vol. 3) at 71; H. Rept. 99-426, supra at 124, 1986-3 C.B. (Vol. 2) at 124.  The same is true with respect to the second excerpt. Reading on from the language to which respondent has referred us, we find that the report goes on to discuss the same two exceptions that respondent would have us ignore today.  H. Conf. Rept. 99-841, supra at II-25, 1986-3 C.B. (Vol. 4) at 25.

Based on our reading of all the legislative history, we find that the excerpts on which respondent relies do not stand for the broad proposition that she espouses.  The excerpts are merely broad rules that are limited by language that follows immediately thereafter.  Unlike respondent, we do not read the legislative history to foreclose the complete deduction of employee meals in 100 percent of the cases.[11]  Petitioners' deduction for their employee meals would not be limited by section 274(n)(1), for example, if section 119 allows all of petitioners' employees to exclude the value of the meals from their gross income.  In such

---

[11] We also place less weight than respondent on the fact that the Congress did not include sec. 274(e)(1) in its list of exceptions under sec. 274(n)(2).

a case, the de minimis fringe benefit exception of sections 132(e) and 274(n)(2)(B) will allow petitioners to claim a complete deduction for the meals because the Cafeterias' revenues and expenses will both be zero for purposes of the revenue/operating cost test.

Respondent is mistaken when she boldly asserts that the Congress did not want section 119 to apply to determinations under section 274(n)(2)(B). The incorporation of section 119 into the de minimis fringe benefit exception of section 132(e) first appeared in section 1.132-7T(a)(2), Temporary Income Tax Regs., 50 Fed. Reg. 52309 (Dec. 23, 1985), which was published before section 274(n)(2)(B) came into law. According to a longstanding, well-established "benign fiction" of statutory construction, we assume that the Congress knew of this incorporation when it promulgated section 274(n)(2)(B). Green v. Bock Laundry Mach. Co., 490 U.S. 504, 528 (1989) (Scalia, J., concurring in judgment); see Lindahl v. OPM, 470 U.S. 768, 783 n.15 (1985); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 382 n.66 (1982); Lorillard v. Pons, 434 U.S. 575, 580-581 (1978); Sohappy v. Hodel, 911 F.2d 1312, 1317 (9th Cir. 1990); Kovacs v. Commissioner, 100 T.C. 124, 129-130, 133 (1993), affd. 25 F.3d 1048 (6th Cir. 1994). With regard to the statement in the conference report that deductions for meal expenses are reduced to 80 percent "whether or not such meals are excludable from the employee's gross income under sec. 119", H. Conf. Rept. 99-841, supra at II-24 to II-25, 1986-3 C.B.

(Vol. 4) at 24-25, we do not find this statement to be disharmonious with our reading of the statutory text. Although we need not and do not pass on the breadth of this statement, one reasonable interpretation is that the entire cost of a section 119 meal is not deductible when the meal is outside of the de minimis fringe benefit exception of section 132(e).

We find further support for our reading in the reason for section 274(n)(1). The Congress included section 274(n)(1) in the Tax Reform Act of 1986, Pub. L. 99-514, sec. 142(b), 100 Stat. 2085, 2118, primarily to address their concern that the then-present law unfairly allowed high-income taxpayers to structure their business affairs in a way that generated deductions for personal expenses such as meals. As stated by the committees, with respect to the need for a change in the then-present law,

> Since the 1960's, the Congress has sought to address various aspects of deductions for meals, entertainment, and travel expenses that the Congress and the public have viewed as unfairly benefiting those taxpayers who were able to take advantage of the tax benefit of deductibility. In his 1961 Tax Message, President Kennedy reported that "too many firms and individuals have devised means of deducting too many personal living expenses as business expenses, thereby charging a large part of their cost to the Federal Government." He stated: "This is a matter of national concern, affecting not only our public revenues, our sense of fairness, and our respect for the tax system, but our moral and business practices as well."

> The committee shares these concerns, and believes that these concerns are not addressed adequately by present law. * * *

> The committee believes that present law, by not focusing sufficiently on the personal-consumption element of deductible meal and entertainment expenses,

unfairly permits taxpayers who can arrange business settings for personal consumption to receive, in effect, a Federal tax subsidy for such consumption that is not available to other taxpayers. The taxpayers who benefit from deductibility under present law tend to have relatively high incomes, and in some cases the consumption may bear only a loose relationship to business necessity. For example, when executives have dinner at an expensive restaurant following business discussions and then deduct the cost of the meal, the fact that there may be some bona fide business connection does not alter the imbalance between the treatment of those persons, who have effectively transferred a portion of the cost of their meal to the Federal Government, and other individuals, who cannot deduct the cost of their meals.

The significance of this imbalance is heightened by the fact that business travel and entertainment often may be more lavish than comparable activities in a nonbusiness setting. For example, meals at expensive restaurants and season tickets for luxury boxes at sporting events are purchased to a significant degree by taxpayers who claim business deductions for these expenses. This disparity is highly visible, and contributes to public perceptions that the tax system is unfair. Polls indicate that the public identifies the deductibility of normal personal expenses such as meals to be one of the most significant elements of disrespect for and dissatisfaction with the present tax system.

In light of these considerations, the committee bill reduces by 20 percent the amount of otherwise allowable deductions for business meals and entertainment. This reduction rule reflects the fact that meals and entertainment inherently involve an element of personal living expenses * * *. [H. Rept. 99-426, supra at 120-121, 1986-3 C.B. (Vol. 2) at 120-121.]

See also S. Rept. 99-313, supra at 67-68, 1986-3 C.B. (Vol. 3) at 67-68.

Respondent's proffered interpretation of section 274(n)(1) stands in marked contrast to the abusive situations that spawned that section. In contrast with the abuses that the Congress meant to address in enacting section 274(n)(1), we see no abuse

that would be curtailed by denying petitioners a full deduction for the cost of their employee meals. Indeed, petitioners' provision of employee meals is a far stride from the abuses that the Congress chose to address in their promulgation of section 274(n)(1). We recognize that the Congress enacted that section out of their concern for taxpayers' deducting expenses, such as meals, that were inherently personal. All the same, we do not read section 274(n)(1) to disallow a full deduction for the cost of "free" employee meals 100 percent of the time.

In short, section 274(n)(2) will allow petitioners to deduct the entire cost of their employee meals if the meals are a de minimis fringe benefit under section 132(e). Thus, petitioners may deduct the meals' full cost if they reasonably determine that the meals are excludable from their employees' incomes under section 119. Sec. 1.132-7(a)(2), Income Tax Regs.[12] To the extent that respondent believes that the de minimis fringe benefit exception is inapplicable because the meals were furnished free of charge, we disagree. Neither the text of section 274 nor its legislative history persuades us that the de minimis fringe benefit exception applies only to cafeterias

_____

[12] We recognize that our incorporation of sec. 119 into the de minimis fringe benefit exception of sec. 274(n)(2)(B) rests solely on sec. 1.132-7(a)(2), Income Tax Regs. Respondent acknowledges that these regulations literally apply to sec. 274(n)(2)(B), but argues that she did not intend for this literal application. Respondent asks the Court to adopt a rule that would limit these regulations to determinations under sec. 132. We refuse to do so. To the extent that respondent wants to limit the plain meaning of the words inscribed in an income tax regulation, she (and not the Court) must prescribe the limitation.

that charge a fee for their meals.  Accordingly, we will deny respondent's motion for partial summary judgment in her favor, and we will set this case for trial to determine whether petitioners qualify for the de minimis fringe benefit exception to section 274(n)(1).  In denying respondent's motion, we have considered all arguments made by her and, to the extent not discussed above, have found them to be without merit.

Turning to petitioners' argument in support of judgment in their favor, section 274(e)(8) provides an exception for "Expenses for goods or services * * * which are sold by the taxpayer in a bona fide transaction for an adequate and full consideration in money or money's worth."  Petitioners argue that the meals fall within this statutory language.  Petitioners argue that they sell the meals to their employees in consideration for the employees' services and the employees' promises not to leave petitioners' business premises during breaks.

We are not persuaded by petitioners' arguments on section 274(e)(8).  Put simply, we do not believe that petitioners sold the meals to their employees in a bona fide transaction for adequate and full consideration.  We believe that petitioners merely presented the meals to their employees in connection with the employees' employment with petitioners.  To say the least, we are sure that petitioners' employees would be surprised to hear that they were paying arm's-length, fair market value prices for the meals.  Yet, this is the holding that petitioners would have us reach.  Such a holding is unsupported by the record and is

contrary to common sense.[13]  Indeed, bearing in mind that petitioners' Federal income tax returns report no sale revenues for their alleged sales of meals to their employees, petitioners' reporting of these meals supports our conclusion.  We also note that petitioners' memorandum of law states that petitioners provide these meals to their employees at "no charge".

We hold that petitioners' provision of the meals is not within section 274(e)(8).  In so holding, we have considered all arguments made by petitioners for a contrary holding and, to the extent not discussed above, have found them to be without merit.

To reflect the foregoing,

<u>An appropriate order denying both motions for partial summary judgment will be issued</u>.

---

[13] As we understand petitioners' argument, they sold the meals to their employees at cost.  Whereas a willing buyer would be delighted to purchase a meal at cost, very few (if any) willing sellers would be able to stay in business if they continued to sell the meals at cost.