117 T.C. No. 9


UNITED STATES TAX COURT


JOSEPH D. SPECKING, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 12010-99, 12348-99,        Filed August 28, 2001.
           14496-99.


     During the years in issue, Ps lived and worked on
Johnston Island, a U.S. insular possession.  Ps claim
that, under sec. 931, I.R.C., they can exclude from
gross income the compensation they received for
services they performed on that island.
     Held:  Ps may not exclude from their gross income
under sec. 931, I.R.C., the compensation they earned on
Johnston Island because that island is not a specified
possession as defined in sec. 931(c), I.R.C.
     Alternatively, Ps claim that, under sec. 911,
I.R.C., and sec. 1.931-1(b)(2), Income Tax Regs., they
can exclude from gross income up to $70,000 of the

---

     [1]Cases of the following petitioners are consolidated
herewith:  Eric N. Umbach, docket No. 12348-99; and Robert J.
Haessly, docket No. 14496-99.

compensation they earned on Johnston Island.

Held: Ps may not exclude from gross income under sec. 911, I.R.C., the compensation they earned on Johnston Island during the years in issue because Johnston Island is not a foreign country within the meaning of sec. 911, I.R.C.  See sec. 1.911-2(g) and (h), Income Tax Regs.


Kenneth W. McWade, for petitioners.

Jonathan J. Ono, for respondent.


OPINION

MARVEL, Judge:  These cases were submitted fully stipulated pursuant to Rule 122.[2]  In separate notices of deficiency, respondent determined the following deficiencies with respect to petitioners' Federal income tax returns:

Joseph D. Specking, docket No. 12010-99

| Year | Deficiency |
|------|-----------|
| 1995 | $8,522 |
| 1996 | 11,531 |
| 1997 | 10,173 |

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

Eric N. Umbach,[3] docket No. 12348-99

| Year | Deficiency |
|------|-----------|
| 1995 | $17,844 |
| 1996 | 18,802 |
| 1997 | 20,025 |

Robert J. Haessly, docket No. 14496-99

| Year | Deficiency |
|------|-----------|
| 1995 | $17,859 |

Petitioners filed separate petitions to redetermine the deficiencies. We consolidated these cases for purposes of briefing and opinion pursuant to Rule 141(a) because they present common questions of fact and law. These cases in the aggregate are referred to as "this case".

After a concession,[4] the only issue remaining for decision is whether petitioners may exclude from gross income, under section 931 or, alternatively, under section 911, compensation they received during the years in issue for services they performed on Johnston Island.

---

[3]For 1997, petitioner Eric N. Umbach (Umbach) filed a joint Federal individual income tax return with Alicia LePard. She did not join with Umbach in filing the petition for 1997. In the notice of deficiency for 1997, respondent refers to Alicia LePard as Alicia Lepard Umbach.

[4]Respondent concedes that petitioner Robert J. Haessly is entitled to claim a credit for child and dependent care expenses in the amount of $43 for 1995.

Background[5]

The facts have been stipulated and are so found.  The parties' stipulations of fact are incorporated into our opinion by this reference.

Johnston Island is located in the central Pacific Ocean approximately 700 nautical miles west-southwest of Honolulu, Hawaii, and it is the largest of four islands making up Johnston Atoll.  The U.S. Constitution and Insular Areas, GAO/OGC-98-5 (app. II), at 50-51 (Nov. 1997); 16 Encyclopedia Americana 147 (1998); 6 New Encyclopaedia Britannica 598 (15th ed. 1998).  Johnston Atoll is an unorganized, unincorporated insular possession of the United States currently under the operational control of the Defense Threat Reduction Agency (formerly known as the Defense Nuclear Agency).[6]  Johnston Atoll has no local government or native population.  Act of Aug. 18, 1856, ch. 164, 11 Stat. 119, current version at 48 U.S.C. secs. 1411-1419 (1994); 5 U.S.C. sec. 5942a (1994); 5 C.F.R. sec. 591.402 (2001); 19 C.F.R. sec. 7.2 (2000); 50 C.F.R. sec. 32.7 (2000); 14 Op. Atty. Gen. 608 (1873); 9 Op. Atty. Gen. 364 (1859); The U.S. Constitution and Insular Areas, supra at 39-40, 50-51; U.S.

---

[5]We rely on judicial notice and stipulations of the parties for statements describing Johnston Island and Johnston Atoll.

[6]Johnston Atoll, furthermore, is a national wildlife refuge under the jurisdiction of the U.S. Department of the Interior. Environmental Assessment, 57 Fed. Reg. 9278 (Mar. 17, 1992).

Department of the Interior, OIA: Other Insular Islands Fact Sheets, Johnston Atoll (Aug. 2000).  A military installation, including an airstrip, occupies Johnston Island; however, access to the island, as well as to all of the atoll, is restricted. Environmental Assessment, 57 Fed. Reg. 9277 (Mar. 17, 1992); 32 C.F.R. sec. 761.4(c) (2000); 16 Encyclopedia Americana, supra at 147.  Also located on Johnston Island is Johnston Atoll Chemical Agent Disposal System (JACADS), a facility for incinerating U.S. chemical weapons stockpiles.  Greenpeace USA v. Stone, 748 F. Supp. 749, 752-753 (D. Haw. 1990); Environmental Assessment, supra at 9278.

Johnston Atoll is not a part of American Samoa, see S.J. Res. 110, ch. 281, 45 Stat. 1253 (1929), current version at 48 U.S.C. secs. 1661-1662 (1994); Guam, see Organic Act of Guam, ch. 512, sec. 2, 64 Stat. 384 (1950), current version at 48 U.S.C. sec. 1421 (1994); or the Commonwealth of the Northern Mariana Islands (CNMI), see Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub. L. 94-241, sec. 1005(b), 90 Stat. 263, 278 (1976), current version at 48 U.S.C. sec. 1801 (1994); Trusteeship Agreement for the Former Japanese Mandated Islands, July 18, 1947, U.N.-U.S., Art. 1, 61 Stat. 3301; H.J. Res. 233, ch. 271, 61 Stat. 397 (1947).  Additionally, islands making up Johnston Atoll are specifically excluded from the islands making

up the State of Hawaii.  Act Admitting Hawaii to Statehood, Pub.
L. 86-3, sec. 2, 73 Stat. 4 (1959), current version at 48 U.S.C.
ch. 3, sec. 2 (1994) ("The State of Hawaii shall consist of all
the islands * * * included in the Territory of Hawaii * * *
except * * * Johnston Island, Sand Island (offshore from Johnston
Island)".); see also Petition of Alacar, 196 F. Supp. 564, 567
n.5, 569 (D. Haw. 1961); United States v. Fullard-Leo, 66 F.
Supp. 774, 778-779 (D. Haw. 1940).

During the years in issue, petitioner Joseph D. Specking
(Specking) and petitioner Eric N. Umbach (Umbach) were employed
by Raytheon Demilitarization Co., a part of Raytheon Engineers &
Constructors, Inc. (Raytheon), a private contractor.  During
1995, petitioner Robert J. Haessly (Haessly) was employed by
Raytheon.  Hereinafter, both companies are referred to as
Raytheon.  During the applicable period, petitioners worked for
Raytheon on Johnston Island on permanent assignment to the JACADS
project, and they lived in quarters provided by Raytheon.  Each
year they were allowed five 2-week rotations for vacations and to
attend to personal matters.

Joseph D. Specking

Specking resided in Rifle, Colorado, when he filed the
petition in his case.  He was assigned to the JACADS project for

the period June 16, 1993, through at least March 22, 2000.[7]

On his returns for 1995 through 1997, Specking reported the following wages from Raytheon, income from other sources, and adjusted gross income (not including any exclusions from income under sections 931 or 911):

| Year | Wages | Income from other sources | Adjusted gross income |
|------|-------|--------------------------|----------------------|
| 1995 | $74,552 | [1]($15,895) | $58,657 |
| 1996 | 85,385 | (18,203) | 67,182 |
| 1997 | 95,246 | (28,211) | 67,035 |

[1]The negative numbers result from a Schedule F, Profit or Loss From Farming, farm loss Specking sustained in each year. With the 1997 return, Specking included a Form 2555, Foreign Earned Income, on which he claimed that he had foreign earned income of $95,246 relating to work performed on Johnston Island, of which $70,000 was an eligible "foreign earned income exclusion".

On or about June 1, 1998, Specking filed Forms 1040X, Amended U.S. Individual Income Tax Returns, for 1995 and 1996 on which he claimed he was entitled to refunds of $8,522 and $11,531, respectively, because he could exclude $70,000 from gross income for each of those years because "UNDER SECTION 931 AND REGULATION 1.931-1 PERSONS EARNING INCOME FROM JOHNSTON ISLAND ARE CONSIDERED TO HAVE EARNED INCOME FROM A FOREIGN SOURCE

---

[7]Specking previously had been assigned to the JACADS project between Aug. 22, 1988, and Nov. 20, 1991.

WHICH CAN BE EXCLUDED AS FOREIGN INCOME."  On or about July 6, 1998, respondent issued refunds to Specking for 1995 and 1996 for the amounts claimed.

In a notice of deficiency issued to Specking on April 1, 1999, respondent determined that Specking was not entitled to exclude any income for 1995 through 1997 because his tax home was not in a foreign country, but in a territory of the United States, and because he was not a bona fide resident of a specified possession as defined in section 931(c).  In that notice of deficiency, respondent also made certain computational adjustments to itemized deductions resulting from the adjustments to income.

Eric N. Umbach

Umbach resided in Gillette, Wyoming, when he filed the petition in his case.  He was assigned to the JACADS project for the period February 5, 1990, through at least June 8, 2000.

On his returns for 1995 through 1997,[8] Umbach reported the following wages from Raytheon, income from other sources, and adjusted gross income (not including any exclusions from income under sections 931 or 911):

---

[8]Umbach filed electronic returns for 1995 and 1996.  The record does not contain a copy of the 1996 return.  We rely on stipulations of the parties and the 1996 Form 1040X for pertinent information relating to the Form 1040 Umbach filed for 1996.

| Year | Wages | Income from other sources | Adjusted gross income |
|------|-------|---------------------------|-----------------------|
| 1995 | $97,492 | ($2,337) | $95,155 |
| 1996 | 103,112 | 16 | 103,128 |
| 1997 | 100,659 | [1]33,363 | 134,022 |

[1]Included in income from other sources is $31,209 of Form W-2 wages earned by Alicia LePard.

With the 1997 return, Umbach included a Form 2555 on which he claimed that he had foreign earned income of $100,659 relating to work performed on Johnston Island, of which $70,000 was an eligible "foreign earned income exclusion".

On or about October 7, 1997, Umbach filed a Form 1040X, for 1996 on which he claimed he was entitled to a refund of $18,802 because he could exclude $70,000 from gross income for that year because "UNDER SECTION 931 AND REGULATION 1.931-1 PERSONS EARNING INCOME FROM JOHNSTON ISLAND ARE CONSIDERED TO HAVE EARNED INCOME FROM A FOREIGN SOURCE WHICH CAN BE EXCLUDED AS FOREIGN INCOME." On or about April 15, 1999, Umbach filed a Form 1040X for 1995 on which he claimed he was entitled to a refund of $18,262 because he could exclude $99,829 from gross income for that year since he was entitled to exclude earnings from his work on Johnston Island Atoll. Respondent issued refunds to Umbach for 1995 and 1996 in the amounts of $17,844 and $18,802, respectively.

In notices of deficiency issued to Umbach for 1995 and 1996 on April 13, 1999, and to Umbach and Alicia Lepard Umbach for 1997 on June 9, 1999, respondent determined that Umbach was not

entitled to exclude any income for 1995 through 1997 because his tax home was not in a foreign country, but in a territory of the United States, and because he was not a bona fide resident of a specified possession as defined in section 931(c). In the notices of deficiency, respondent also made certain computational adjustments to itemized deductions resulting from the adjustments to income.

Robert J. Haessly

Haessly resided on Johnston Island when he filed the petition in his case. He was assigned to the JACADS project for the period March 9, 1994, through at least October 31, 1997.

On his return for 1995, Haessly reported the following wages from Raytheon, income from other sources, and adjusted gross income (not including any exclusions from income under sections 931 or 911):

| Year | Wages | Income from other sources | Adjusted gross income |
|------|-------|---------------------------|-----------------------|
| 1995 | $95,654 | $1,692 | [1]$85,346 |

[1]Haessly also claimed a $12,000 adjustment to income for alimony paid.

Subsequently, Haessly filed a Form 1040X for 1995 on which he claimed he was entitled to a refund of $17,816 because he could exclude $95,654 from gross income for that year since he was "A BONA FIDE RESIDENT OF U.S. POSSESSION JOHNSTON ISLAND". With the Form 1040X, Haessly included a Form 4563, Exclusion of

Income for Bona Fide Residents of American Samoa.  On February 6, 1998, respondent issued a refund to Haessly for 1995 for $17,816 in tax, plus $2,691 in accrued interest.

In a notice of deficiency issued to Haessly on April 1, 1999, respondent determined that Haessly was not entitled to exclude any income for 1995 because his tax home was not in a foreign country, but in a territory of the United States, and because he was not a bona fide resident of a specified possession as defined in section 931(c).  In that notice of deficiency, respondent also made certain computational adjustments to itemized deductions resulting from the adjustment to income.

Discussion

Section 61(a) provides that gross income means all income from whatever source derived.  That section has been interpreted broadly to encompass all gains except those specifically exempted by Congress.  E.g., Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955).  Exclusions from income, furthermore, are construed narrowly, and taxpayers must bring themselves within the clear scope of the exclusion.  E.g., Rule 142(a); Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Dobra v. Commissioner, 111 T.C. 339, 349 n.16 (1998).  Thus, citizens of the United States generally also are taxed on income earned outside the geographical boundaries of the United States unless

they prove that the income is specifically exempted.  E.g., sec. 61(a); Cook v. Tait, 265 U.S. 47, 54, 56 (1924).

Petitioners contend that the compensation they earned for services they performed on Johnston Island during the years in issue is excludable under section 931, or, in the alternative, under section 911.  Respondent, on the other hand, contends that petitioners' income for the years in issue is not excludable under either provision.  For the reasons discussed below, we agree with respondent.

I.  Section 931

Petitioners contend that the compensation they earned on Johnston Island is excludable under section 931 because Johnston Island is a possession of the United States and they otherwise satisfy the requirements of that section.

A.  Statutory Language Before the Tax Reform Act of 1986

Before the enactment of section 1272(a) of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2593, section 931[9] permitted citizens of the United States to exclude income

---

[9]Sec. 931, as in effect before enactment of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2085, read in pertinent part as follows:

> SEC. 931.  INCOME FROM SOURCES WITHIN POSSESSIONS OF THE UNITED STATES.
>
> (a) General Rule.--In the case of individual citizens of the United States, gross income means only gross income from sources within the United States if
>
> (continued...)

derived from sources within possessions of the United States,

except for Puerto Rico, the U.S. Virgin Islands, or Guam, if

certain conditions were satisfied.  Hereinafter, we refer to

section 931 before its amendment by TRA 1986 section 1272(a) as

old section 931.  Old section 931 did not define the term

"possession of the United States".  However, regulations

promulgated under old section 931 provide, in pertinent part:

---

[9](...continued)
the conditions of both paragraph (1) and paragraph (2)
are satisfied:

> (1) 3-year period.--If 80 percent or more of
> the gross income of such citizen (computed without
> the benefit of this section) for the 3-year period
> immediately preceding the close of the taxable
> year (or for such part of such period immediately
> preceding the close of such taxable year as may be
> applicable) was derived from sources within a
> possession of the United States; and

> (2) Trade or business.--If 50 percent or more
> of his gross income (computed without the benefit
> of this section) for such period or such part
> thereof was derived from the active conduct of a
> trade or business within a possession of the
> United States either on his own account or as an
> employee or agent of another.

(b) Amounts Received in United States.--
Notwithstanding subsection (a), there shall be included
in gross income all amounts received by such citizens
* * * within the United States, whether derived from
sources within or without the United States.

(c) Definition.--For purposes of this section, the
term "possession of the United States" does not include
the Commonwealth of Puerto Rico, the Virgin Islands of
the United States, or Guam.

§1.931-1. Citizens of the United States and domestic corporations deriving income from sources within a possession of the United States.--(a) Definitions. (1) As used in section 931 and this section, the term "possession of the United States" includes American Samoa, Guam, <u>Johnston Island</u>, Midway Islands, the Panama Canal Zone, Puerto Rico, and Wake Island.  However, the term does not include (i) the Virgin Islands and (ii), when used with respect to citizens of the United States, the term does not include Puerto Rico or, in the case of taxable years beginning after December 31, 1972, Guam.

(2) As used in section 931 and this section, the term "United States" includes only the States, the Territories of Alaska and Hawaii, and the District of Columbia. [Emphasis added.]

The last amendment to section 1.931-1, Income Tax Regs., was promulgated in 1975.  T.D. 7385, 40 Fed. Reg. 50260 (Oct. 29, 1975).

B.  <u>Statutory Language After TRA 1986</u>

TRA 1986 section 1272(a) amended old section 931 to read, in pertinent part:

SEC. 931.   INCOME FROM SOURCES WITHIN <u>GUAM, AMERICAN SAMOA, OR THE NORTHERN MARIANA ISLANDS</u>.

(a) General Rule.--In the case of an individual who is a bona fide resident of <u>a specified possession</u> during the entire taxable year, gross income shall not include--

(1) income derived from sources <u>within any specified possession</u>, and

(2) income effectively connected with the conduct of a trade or business by such individual <u>within any specified possession</u>.

\*     \*     \*     \*     \*     \*     \*

(c) Specified Possession.--For purposes of this

section, the term "specified possession" means <u>Guam, American Samoa, and the Northern Mariana Islands</u>.

(d) Special rules.--For purposes of this section--

(1) Employees of the United States.--Amounts paid for services performed as an employee of the United States (or any agency thereof) shall be treated as not described in paragraph (1) or (2) of subsection (a).

(2) Determination of source, etc.--The determination as to whether income is described in paragraph (1) or (2) of subsection (a) shall be made under regulations prescribed by the Secretary.

(3) Determination of residency.--For purposes of this section and section 876, the determination of whether an individual is a bona fide resident of Guam, American Samoa, or the Northern Mariana Islands shall be made under regulations prescribed by the Secretary.  [Emphasis added.]

C.  <u>Positions of The Parties</u>

1.  <u>Petitioners' position</u>

Petitioners contend that the amendments to old section 931 were not in effect for the years in issue; rather, they argue, old section 931 remained in effect for those years.[10]

---

[10]To be more precise, petitioners assert that there are three possible interpretations for the overall effect of TRA 1986 secs. 1271, 1272, and 1277, 100 Stat. 2591, 2593, 2600, on old sec. 931 for the years in issue:  (1) Sec. 931 as amended by TRA 1986 sec. 1272 is in effect, but only as to American Samoa; (2) old sec. 931 remains in effect; or (3) no sec. 931 remains in effect.  Petitioners, however, argue that only interpretation (2) gives full effect to the terms and conditions of the statute and to congressional intent, and that is the only interpretation advocated by petitioners.

Petitioners assert that, under TRA 1986 section 1277,[11] Congress made the effective date of the amendments to old section 931 for all taxpayers conditional on the implementation of the agreements between the United States and the specified possessions required under TRA 1986 section 1271(b), 100 Stat. 2592.[12]  Petitioners

---

[11]TRA 1986 sec. 1277 provides, in pertinent part:

SEC. 1277.  EFFECTIVE DATE.

(a) In General.--Except as otherwise provided in this section, the amendments made by this subtitle shall apply to taxable years beginning after December 31, 1986.

(b) Special Rule for Guam, American Samoa, and the Northern Mariana Islands.--The amendments made by this subtitle shall apply with respect to Guam, American Samoa, or the Northern Mariana Islands (and to residents thereof and corporations created or organized therein) only if (and so long as) an implementing agreement under section 1271 is in effect between the United States and such possession.

[12]TRA 1986 sec. 1271 provides, in pertinent part:

SEC. 1271.  AUTHORITY OF GUAM, AMERICAN SAMOA, AND THE NORTHERN MARIANA ISLANDS TO ENACT REVENUE LAWS.

(a) In General.--Except as provided in subsection (b), nothing in the laws of the United States shall prevent Guam, American Samoa, or the Northern Mariana Islands from enacting tax laws (which shall apply in lieu of the mirror system) with respect to income--

(1) from sources within, or effectively connected with the conduct of a trade or business within, any such possession, or

(2) received or accrued by any resident of such possession.

(b) Agreements To Alleviate Certain Problems Relating to Tax Administration.--Subsection (a) shall apply to Guam, American Samoa, or the Northern Mariana

(continued...)

maintain that such condition precedent to the effective date of TRA 1986 section 1272(a) has not been fulfilled inasmuch as only American Samoa has effectuated a tax implementation agreement with the United States. Tax Implementation Agreement Between the United States of America and American Samoa, 1988-1 C.B. 408.[13] Petitioners further assert that there is no evidence that the tax implementation agreement executed by American Samoa and the United States fully satisfies the requirements of TRA 1986 section 1271(b). Hence, petitioners maintain, since the

---

[12](...continued)
Islands only if (and so long as) an implementing agreement is in effect between the United States and such possession with respect to--

     (1) the elimination of double taxation involving taxation by such possession and taxation by the United States.

     (2) the establishment of rules under which the evasion or avoidance of United States income tax shall not be permitted or facilitated by such possession.

     (3) the exchange of information between such possession and the United States for purposes of tax administration, and

     (4) the resolution of other problems arising in connection with the administration of the tax laws of such possession or the United States.

[13]Representatives for the Government of American Samoa signed the tax implementation agreement on Dec. 10, 1987, and the representative for the Government of the United States signed it on Jan. 7, 1988. The tax implementation agreement generally became effective as of Jan. 1, 1988. Tax Implementation Agreement Between the United States of America and American Samoa, 1988-1 C.B. 408, 411. Although the United States and Guam entered into a tax implementation agreement, Tax Implementation Agreement Between the United States of America and Guam, 1989-1 C.B. 342, that agreement is not yet effective. Treasury News Release NB-1077 (Dec. 27, 1990).

conditions required for the effectuation of the amendments to old section 931 were not satisfied, those amendments never became effective; therefore, old section 931 continued to be applicable for the years in issue. Thus, petitioners argue, they may exclude the compensation they received for services performed on Johnston Island during those years under old section 931.

Petitioners contend further that respondent's failure to amend section 1.931-1, Income Tax Regs., to exclude Johnston Island from the list of possessions for which section 931 applies, shows that respondent believes that old section 931 remained in force for the years in issue. Petitioners further argue that section 1.931-1, Income Tax Regs., is not inconsistent with the statute because the conditions required by Congress for the effectuation of the amendments to old section 931 have not yet occurred.

## 2. Respondent's Position

Respondent contends that, under TRA 1986 section 1277(a), 100 Stat. 2600, the amendments to old section 931 became effective as to petitioners for taxable years beginning after December 31, 1986. Thus, respondent maintains, section 931 does not apply to petitioners for the years in issue because Johnston Island is not a "specified possession" within the meaning of the statute. Sec. 931(c). Respondent asserts, in effect, that any provision of section 1.931-1, Income Tax Regs., which includes a

U.S. possession other than Guam, American Samoa, or the CNMI as a U.S. possession for purposes of section 931 is inconsistent with the statute, and hence invalid, for any taxable year beginning after December 31, 1986. Hereinafter, for purposes of this case, possessions of the United States other than Guam, American Samoa, the CNMI, and the Virgin Islands[14] will be referred to as the other U.S. possessions.

Respondent maintains that, in TRA 1986 section 1272(a), Congress clearly intended to limit the exclusion provided by section 931 to bona fide residents of only Guam, American Samoa, and the CNMI, and to income derived from sources therein. Thus, respondent argues, under TRA 1986 sections 1272(a) and 1277(a), the existence of an implementing agreement is not a condition precedent for the effectuation of the amendments to old section 931 for residents of Johnston Island; rather, under TRA 1986 sections 1271(b) and 1277(b), that requirement applies only to bona fide residents of the specified possessions and to income derived from sources within those possessions. Therefore, respondent asserts, the question of whether a valid implementing agreement exists between the United States and American Samoa, Guam, or the CNMI is not relevant in this case. Respondent argues that, for years beginning after 1986, bona fide residents

---

[14]We include the Virgin Islands here because other provisions in subtit. G of tit. XII apply specifically to the Virgin Islands. TRA 1986 secs. 1273-1277, 100 Stat. 2595-2600.

only of Guam, American Samoa, and the CNMI are eligible for the exclusion provided by section 931, as amended by TRA 1986 section 1272(a), and only if the possession has an implementing agreement in force.[15]

D. <u>Analysis</u>

Our first step in analyzing the issue involved in this case is to ask "whether Congress has directly spoken to the precise question at issue." <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842 (1984). In determining whether Congress specifically addressed the precise question at issue, we do not examine the statutory provision in isolation; rather, guided by common sense, we consider the provision in context, with a view to its place in the overall statutory scheme. <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 132-133 (2000);

_____

[15]The mirror system of taxation in effect in a qualified possession the day before the effective date of TRA 1986 continues to operate until the possession amends its tax laws. S. Rept. 99-313, at 482-484, 490-491 (1986), 1986-3 C.B. (Vol. 3) 1, 482-484, 490-491. Unlike Guam and the CNMI, before the enactment of the TRA 1986, American Samoa had the authority to enact its own tax system; however, with certain modifications not pertinent here, it generally adopted the U.S. Internal Revenue Code as its own. S. Rept. 99-313, at 477 (1986), 1986-3 C.B. (Vol. 3) 1, 477. Thus, had American Samoa and the United States not entered into an implementing agreement, income from sources within that possession would qualify for the exclusion provided by old section 931. For a description of the mirror system of taxation in force in Guam and the CNMI, see <u>Preece v. Commissioner</u>, 95 T.C. 594 (1990); see also S. Rept. 99-313, at 475-476 (1986), 1986-3 C.B. (Vol. 3) 1, 475-476.

Gustafson v. Alloyd Co., 513 U.S. 561, 568 (1995); Brown v. Gardner, 513 U.S. 115, 118 (1994).

For this case, the precise question at issue is whether the amendments to old section 931 made by TRA 1986 section 1272(a) were in effect during the years in issue as to residents of Johnston Island. To resolve that question, we look first to the statute itself. Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., supra. In particular, we look to TRA 1986 sections 1271, 1272, and 1277.[16]

TRA 1986 sections 1271, 1272, and 1277 are encompassed in TRA 1986 Title XII--Foreign Tax Provisions, Subtitle G--Tax Treatment of Possessions. TRA 1986 sections 1271 and 1272 are in part I of subtitle G. Part I specifically addresses the "Treatment of Guam, American Samoa, and the Northern Mariana Islands". TRA 1986 section 1271, see supra note 12, does not appear in, or make any changes to, the Internal Revenue Code (Code). Rather, that provision grants Guam, American Samoa, and

---

[16]TRA 1986 sec. 1273, in pt. I of subtit. G of tit. XII, relates to the treatment of corporations organized in Guam, American Samoa, and the CNMI. TRA 1986 secs. 1274 and 1275, in pt. II of subtit. G, relate specifically to the Virgin Islands. TRA 1986 sec. 1276, in pt. III of subtit. G, amends I.R.C. sec. 7654. Pub. L. 99-514, 100 Stat. 2599-2600. That section relates to the "cover over" of income tax into the Treasury of a "specified possession" (which for purposes of sec. 7654 is defined to mean "Guam, American Samoa, the Northern Mariana Islands, and the Virgin Islands"). Sec. 7654(b)(2). None of those provisions are applicable to the issue involved in this case.

the CNMI, under certain conditions, the right to enact their own tax laws, independent of the Code, with respect to income (1) from sources within, or effectively connected with the conduct of a trade or business within, the possession, or (2) received or accrued by a resident of the possession.  TRA 1986 sec. 1271(a).  TRA 1986 section 1271(b) makes that grant of authority applicable to Guam, American Samoa, or the CNMI provisional on the existence of an implementing agreement "between the United States and such possession".  (Emphasis added.)

TRA 1986 section 1272 amends old section 931 (as well as other Code provisions not pertinent here).  Specifically, TRA 1986 section 1272(a) provides in pertinent part:  "In General.-- Section 931 (relating to income from sources within possessions of the United States) is amended to read as follows:  'SEC. 931. INCOME FROM SOURCES WITHIN GUAM, AMERICAN SAMOA, OR THE NORTHERN MARIANA ISLANDS.'"  See supra p. 14.

TRA 1986 sections 1271 and 1272 do not specifically address the other U.S. possessions.  Nonetheless, the language of the statute, taken in context, indicates that Congress intended to provide an exclusion from gross income under section 931 as amended by TRA 1986 section 1272(a) only for bona fide residents of Guam, American Samoa, and the CNMI, and only if the specified possession has an implementing agreement in force with the United States.  Had Congress intended to retain the benefits of section

931 for residents of the other U.S. possessions it would not have used the restrictive language found in those provisions, as well as in TRA 1986 section 1277.  Compare TRA 1986 sec. 1271(a) ("such possession"), sec. 1271(b) ("such possession"), sec. 1272(a) ("specified possession"), and sec. 1277(b) ("such possession"), with, e.g., TRA 1986 sec. 201(a), 100 Stat. 2121, 2127, 2131, amending Code sec. 168 (Code sec. 168(g)(6)(B):  "For purposes of this subparagraph, the term 'United States' includes the Commonwealth of Puerto Rico and the possessions of the United States" (emphasis added), and Code sec. 168(h)(4)(A)(ii):  "For purposes of clause (i), the United States, each State, and each possession of the United States" (emphasis added)); TRA 1986 sec. 252, 100 Stat. 2189, 2199, adding Code sec. 42 (Code sec. 42(h)(7)(B): "The term 'State' includes a possession of the United States" (emphasis added)); TRA 1986 sec. 1301(a), 100 Stat. 2602, 2603, amending Code sec. 103 (Code sec. 103(c)(2): "The term 'State' includes the District of Columbia and any possession of the United States" (emphasis added)).

We find support for our understanding of the statute in its legislative history.  E.g., S. Rept. 99-313, at 477-482 (1986), 1986-3 C.B. (Vol. 3) 1, 477-482.  Nowhere in that legislative history does Congress indicate an intention to continue to extend the benefits of section 931 to bona fide residents of any of the other U.S. possessions or to income from sources within those

other possessions.  The following passage from S. Rept. 99-313 is illustrative:

> An individual who is a bona fide resident of Guam, American Samoa, or the CNMI during the entire taxable year is subject to U.S. taxation in the same manner as a U.S. resident.  However, in the case of <u>such an individual</u>, gross income for U.S. tax purposes does not include income derived <u>from sources within any of the three possessions</u> * * *.  * * *  Thus, even a bona fide resident of Guam, the CNMI, or American Samoa is required to file a U.S. return and to pay taxes on a net basis <u>if he receives income from sources outside the three possessions</u> (i.e., U.S. or foreign source income).  * * *  [<u>Id.</u> at 480-481, 1986-3 C.B. (Vol. 3) at 480-481; emphasis added.]

Our understanding of the statute also comports with congressional intent of enabling Guam, American Samoa, and the CNMI to enact their own tax laws independent of the Code, subject to certain restrictions, coordinating their tax systems with the U.S. tax system, and preventing those possessions from being used as tax havens.  <u>Id.</u> at 479, 1986-3 C.B. (Vol. 3) at 479.

Petitioners, however, contend that the amendments to old section 931 made by TRA 1986 section 1272(a) are merely "proposed changes" until Guam, American Samoa, and the CNMI enact valid implementing agreements with the United States.  We do not agree.

TRA 1986 section 1277, see <u>supra</u> note 11, in part IV of subtitle G, provides effective dates for all of subtitle G.  TRA 1986 section 1277 does not specifically address the other U.S. possessions.  However, the language of that provision, taken in context with the other statutory provisions and the overall

statutory scheme, shows that the amendments to old section 931 became effective as to petitioners for tax years beginning after December 31, 1986.

TRA 1986 section 1277(a) provides that the amendments made by TRA 1986 subtitle G in general become effective for taxable years beginning after December 31, 1986, unless otherwise provided in TRA 1986 section 1277. Thus, unless an exception to that general effective date is provided by another subsection of TRA 1986 section 1277, the amendments to old section 931 became effective as to petitioners for tax years beginning in 1987. We focus below on subsection (b) of TRA 1986 section 1277 because the other subsections are not relevant to the issue involved in this case.[17]

TRA 1986 section 1277(b) provides that the amendments made by subtitle G of title XII "apply with respect to Guam, American Samoa, or the Northern Mariana Islands" and to residents thereof and corporations created or organized therein "only if (and so long as) an implementing agreement under section 1271 is in effect between the United States and such possession." (Emphasis

---

[17]TRA 1986 sec. 1277(c) relates to the Virgin Islands; TRA 1986 sec. 1277(d) mandates reports from the Secretary relating to the implementation agreements described in TRA 1986 sec. 1277(b) and (c), should certain conditions arise; and TRA 1986 sec. 1277(e) provides a special rule for U.S. citizens who become residents of Guam, American Samoa, or the CNMI. TRA 1986, 100 Stat. 2601-2602.

added.)  As we read TRA 1986 section 1277, the amendments to old section 931 made by TRA 1986 section 1272(a) are not provisional in their application to petitioners.  Congress specifically provided in TRA 1986 section 1272(a) that section 931 is amended for tax years beginning after December 31, 1986.  In TRA 1986 section 1277(b), Congress makes the application of those amendments conditional on the existence of the required implementation agreement between the United States and the specified possession, but only as to Guam, American Samoa, and the CNMI, and the residents and corporations thereof.  Thus, TRA 1986 section 1277(b) does not apply for bona fide residents of the other U.S. possessions.  As for those residents, the general effective date of TRA 1986 section 1277(a) controls.  As a result, income earned in any possession other than Guam, American Samoa, and the CNMI is not eligible for the exclusion provided under section 931 as amended by TRA 1986 section 1272(a) for tax years beginning after December 31, 1986.  We note further that nothing in the legislative history supports petitioners' argument that Congress intended to keep old section 931 in force as to the other possessions should one or more of the specified possessions not implement a tax agreement with the United States.  E.g., S. Rept. 99-313, supra at 484-485, 1986-3 C.B. (Vol. 3) at 484-485.

Petitioners' reliance on section 1.931-1, Income Tax Regs., is misplaced.  The regulatory language on which petitioners rely

defines the term "possession" for purposes of old section 931. As we have concluded above, that provision no longer applies to petitioners. Consequently, the regulatory provision also has no application to them and is obsolete as to petitioners.

We do not agree with petitioners that respondent's failure to amend section 1.931-1, Income Tax Regs., supports petitioners' position. As the Supreme Court recently observed regarding another unamended regulation provision: "The Treasury's relaxed approach to amending its regulations to track Code changes is well documented. * * * The absence of any amendment * * * is more likely a reflection of the Treasury's inattention than any affirmative intention on its part to say anything at all." United Dominion Indus., Inc. v. United States, 532 U.S. ___, 121 S. Ct. 1934, 1942-1943 (June 4, 2001).

E. Summary

For the years in issue, section 931 does not apply to the compensation petitioners received for services they performed on Johnston Island. Accordingly, we sustain respondent's determination that petitioners may not exclude any of that compensation from their gross income for the years in issue under section 931.

II. Section 911

Petitioners argue, in the alternative, that if they may not exclude the compensation they earned on Johnston Island under

section 931 for the years in issue, then that compensation can be excluded under section 911.

A.  In General

Section 911(a) provides in part that a "qualified individual" may elect to exclude from gross income his or her "foreign earned income".  Section 911(b)(2) limits the amount of the exclusion for foreign earned income to $70,000.

Section 911(b)(1)(A) defines the term "foreign earned income" to mean, in general, "the amount received by such individual from sources within a foreign country or countries which constitute earned income attributable to services performed by such individual" during the period set forth in section 911(d)(1).  Section 911(b)(1)(B) excludes from foreign earned income certain amounts not relevant to this case.

Section 911(d)(1) defines the term "qualified individual" for purposes of section 911 to mean

> an individual whose tax home is in a foreign country and who is--
>         (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or
>         (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period.

The Internal Revenue Code does not define the term "foreign country" for purposes of section 911.  However, section 1.911-2(h), Income Tax Regs., provides:

> (h) Foreign country.  The term "foreign country" when used in a geographical sense includes <u>any territory under the sovereignty of a government other than that of the United States</u>.  It includes the territorial waters of the foreign country (determined in accordance with the laws of the United States), the air space over the foreign country, and the seabed and subsoil of those submarine areas which are adjacent to the territorial waters of the foreign country and over which the foreign country has exclusive rights, in accordance with international law, with respect to the exploration and exploitation of natural resources. [Emphasis added.]

Section 1.911-2(g), Income Tax Regs., furthermore, provides that the term "United States"

> when used in a geographical sense includes <u>any territory under the sovereignty of the United States</u>. It includes the states, the District of Columbia, <u>the possessions and territories of the United States</u>, the territorial waters of the United States, the air space over the United States, and the seabed and subsoil of those submarine areas which are adjacent to the territorial waters of the United States and over which the United States has exclusive rights, in accordance with international law, with respect to the exploration and exploitation of natural resources.  [Emphasis added.]

B.  <u>Positions of the Parties</u>

1.  <u>Petitioners' Position</u>

Petitioners acknowledge that Johnston Island is a territory under the sovereignty of the United States and not a foreign country.  Nonetheless, they assert that, if the income they earned on Johnston Island is not excludable under section 931,

then under section 1.931-1(b)(2), Income Tax Regs.,[18] petitioners

satisfy the requirements for exclusion under section 911;

therefore, they argue, they may exclude up to $70,000 of the

income they earned on Johnston Island during the years in issue.

2.  Respondent's Position

Respondent contends that section 1.931-1(b)(2), Income Tax

Regs., cannot operate to provide petitioners an exclusion from

income under section 911.  Respondent asserts that petitioners do

not qualify for the exclusion provided by section 911 because,

pursuant to section 1.911-2(g) and (h), Income Tax Regs.,

Johnston Island is a possession of the United States and, thus,

it cannot constitute a foreign country for purposes of that

section.  Therefore, respondent maintains, the compensation

petitioners earned on Johnston Island cannot constitute foreign

earned income as defined in section 911(b), and, thus,

---

[18]Sec. 1.931-1(b)(2), Income Tax Regs., provides:

   (2) Relationship of sections 931 and 911.  A
citizen of the United States who cannot meet the 80-
percent and the 50-percent requirements of section 931
but who receives earned income from sources within a
possession of the United States, is not deprived of the
benefits of the provisions of section 911 (relating to
the exemption of earned income from sources outside the
United States), provided he meets the requirements
thereof.  In such a case none of the provisions of
section 931 is applicable in determining the citizen's
tax liability.  For what constitutes earned income, see
section 911(b).

petitioners may not exclude any of that compensation under section 911(a).

C. Analysis

We agree with respondent that under section 1.911-2(g) and (h), Income Tax Regs., Johnston Island cannot constitute a foreign country for purposes of section 911 because the island constitutes a possession under the sovereignty of the United States. Inasmuch as Johnston Island does not fall within the definition of a foreign country, the compensation petitioners earned on Johnston Island does not come within the definition of "foreign earned income", nor was their "tax home" in a foreign country. Sec. 911(b)(1)(A) and (d). Consequently, petitioners cannot satisfy the requirements for the exclusion from income provided by section 911.

We do not agree with petitioners that section 1.931-1(b)(2), Income Tax Regs., nonetheless operates to provide them an exclusion from income under section 911. Section 1.931-1(b)(2), Income Tax Regs., was promulgated in 1960 by T.D. 6500. See 25 Fed. Reg. 11402, 11951 (Nov. 26, 1960). Subsequent amendments to the regulations promulgated under section 931 did not change the text of section 1.931-1(b)(2), Income Tax Regs. See T.D. 7283, 38 Fed. Reg. 20823 (Aug. 3, 1973); T.D. 7385, 40 Fed. Reg. 50260 (Oct. 29, 1975). At the time section 1.931-1(b)(2), Income Tax Regs., was promulgated, section 911(a)(1) provided an exclusion

from gross income for a citizen of the United States who satisfied the statutory residency test in a foreign country or countries for "amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income [as defined in section 911(b)] attributable to services performed" during the required period.  In addition, section 911(a)(2) provided a limited exclusion from gross income for a citizen of the United States who was present in a foreign country for a certain minimum time period for amounts received from sources without the United States which constituted earned income attributable to services performed during that period.  See Miller v. Commissioner, 52 T.C. 752, 757 (1969).  Congress imposed certain limitations and restrictions on the amounts that could be excluded under section 911(a)(1) for services performed after December 31, 1962.  See Revenue Act of 1962, Pub. L. 87-834, sec. 11, 76 Stat. 1003-1006; see also Hills v. Commissioner, 72 T.C. 958, 962-963 (1979).  Subsequently, for taxable years beginning after December 31, 1977, Congress limited the application of section 911 to individuals residing in camps located in hardship areas and provided a deduction in section 913 for certain living expenses for a taxpayer who had a tax home in a foreign country and who satisfied the statutory residency or presence tests.  See Foreign Earned Income Act of 1978, Pub. L. 95-615, secs. 201-203, 209(a),

92 Stat. 3098-3106, 3109; see also Sislik v. Commissioner, T.C. Memo. 1989-495, affd. per curiam by court order (D.C. Cir. 1992). For tax years after 1981, Congress repealed section 913 and completely revised section 911 to provide that an individual must have his "tax home" in a foreign country and must satisfy either the "bona fide residence" requirement or the "physical presence" requirement of section 911(d)(1) to be entitled to the foreign earned income exclusion within the context of section 911. See Economic Recovery Tax Act of 1981, Pub. L. 97-34, secs. 111-112, 115, 95 Stat. 190-195, 196; see also Lemay v. Commissioner, 837 F.2d 681, 682 (5th Cir. 1988), affg. T.C. Memo. 1987-256; Harrington v. Commissioner, 93 T.C. 297, 303-304 (1989). For purposes of section 911, the term "tax home" is defined as the individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). Sec. 911(d)(3). However, section 911(d)(3) further provides that "An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States." See also Sislik v. Commissioner, supra; sec. 1.911-2(b), Income Tax Regs.[19]

---

[19]Sec. 1.911-2(b), Income Tax Regs., defines "tax home" as follows:

>    (b) Tax home.  For purposes of paragraph (a)(i) of this section, the term "tax home" has the same meaning which it has for purposes of section 162(a)(2)

(continued...)

Section 911(d)(9) authorizes the Secretary to prescribe "necessary or appropriate regulations to carry out the purposes of" section 911.[20]  Pursuant to that grant of authority, the Treasury promulgated proposed regulations under section 911 in 1983 (see 48 Fed. Reg. 33007 (July 20, 1983)) and final regulations in 1985 (see T.D. 8006, 50 Fed. Reg. 2959 (Jan. 23, 1985)) that apply to the years in issue.  Those regulations are legislative in character; therefore, they are entitled to greater weight than interpretative regulations.[21]  See Faltesek v.

---

[19](...continued)
(relating to travel expenses away from home).  Thus, under section 911, an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business or, if the individual has no regular or principal place of business because of the nature of the business, then at his regular place of abode in a real and substantial sense.  An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States.  Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time.  Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean that the individual's abode is in the United States.

[20]Sec. 911(d)(9) originally was designated sec. 911(d)(7) in sec. 111(a) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 194.  It was redesignated sec. 911(d)(8) by sec. 101(c)(1) of the Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2366, and then further redesignated sec. 911(d)(9) by sec. 1233(b) of TRA 1986, 100 Stat. 2564.

[21]Furthermore, the regulations would be valid under the
(continued...)

Commissioner, 92 T.C. 1204, 1211-1213 (1989); Estate of Gunland v. Commissioner, 88 T.C. 1453, 1457 (1987). Included in those legislative regulations are the definition of "tax home" quoted supra note 19 and the definitions of "United States" and "foreign country" set forth in section 1.911-2(g) and (h), Income Tax Regs., and quoted supra p. 29.

The regulations under section 911 promulgated in 1985 take priority over section 1.931-1(b)(2), Income Tax Regs., promulgated in 1960. The regulations under section 911 are not only later in time; they also are legislative regulations construing the very statute, i.e., section 911, that is in issue. By contrast, section 1.931-1(b)(2), Income Tax Regs., interprets old section 931, which ceased to apply to Johnston Island, and thus to petitioners' situation, for tax years beginning after December 31, 1986. Accordingly, section 1.931-1(b)(2), Income Tax Regs., is obsolete to the extent it suggests a connection between sections 911 and 931. Thus, section 1.931-1(b)(2), Income Tax Regs., cannot operate to allow petitioners an exclusion from income under section 911 for any of the compensation they earned on Johnston Island during the years in issue.

---

[21](...continued)
Secretary's general authority to promulgate regulations set forth in section 7805. Faltesek v. Commissioner, 92 T.C. 1204, 1212 (1989).

D.  Summary

Section 911 does not apply to the compensation petitioners received for personal services performed on Johnston Island. Accordingly, we sustain respondent's determination that petitioners may not exclude from their gross income for the years in issue under section 911 any of the compensation they received for the personal services they performed on Johnston Island.

Conclusion

We have carefully considered all remaining arguments made by petitioners for contrary holdings, and, to the extent not discussed, we find them to be irrelevant or without merit.

To reflect the foregoing,

Decisions will be entered for respondent in docket Nos. 12010-99 and 12348-99.

Decision will be entered under Rule 155 in docket No. 14496-99.