T.C. Memo. 2019-133

UNITED STATES TAX COURT

ELENA LEA MORGAN WESCHENFELDER AND FREDERICK BURKHART
WESCHENFELDER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4825-18.                    Filed October 3, 2019.

Elena Lea Morgan Weschenfelder and Frederick Burkhart Weschenfelder,

pro sese.

Donald Priver, Gabriel Nunez-Lafontaine, and Kathleen A. Dombrowski,

for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  In a notice of deficiency sent December 1, 2017,

respondent determined deficiencies, additions to tax, and penalties with respect to

petitioners' Federal income tax for 2004, 2005, and 2006 as follows:

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 2004 | $33,458 | $8,364.50 | $6,691.60 |
| 2005 | 42,053 | 10,513.25 | 8,410.60 |
| 2006 | 14,143 | 2,981.50 | 2,828.60 |

After concessions, the issues for decision are whether petitioners are eligible to exclude from their taxable income wages earned in Iraq and in Germany during those years pursuant to section 911, whether they are liable for the late-filing additions to tax, and whether they are liable for the substantial understatement penalties. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners owned a home in Texas at all relevant times before, during, and after the years in issue, and they resided in Texas when they timely filed the petition. Petitioners were married and had three children.

Petitioners' Employment and Activities

Petitioners Elena Lea Morgan Weschenfelder (ELMW) and Frederick Burkhart Weschenfelder (FBW) were employed by CACI Premier Technology,

[*3] Inc. (CACI), and Sycoleman Corp. in Iraq during 2004 and 2005. They lived and worked full time on a military base, living in Republican Guard barracks that had been refurbished by their employer. Petitioners were employed as intelligence analysts. Their jobs involved strategic and tactical intelligence, and they worked with the Iraqi interim Government to help identify threats and to coordinate safe passage and gatherings within the country.

FBW left for Iraq on January 4, 2004. He returned to the United States from April 10 through 18, 2004, and in relation to his mother's funeral from August 21 through September 2, 2004. Otherwise, he stayed in Iraq until January 22, 2005.

ELMW left for Iraq on or around April 25, 2004. Petitioners' children remained in Texas during 2004, living with ELMW's relatives or friends. She returned to the United States for 10 days in August 2004 to attend FBW's mother's funeral and on December 23, 2004, to spend the holidays with petitioners' children. She returned to Iraq on January 8, 2005. She returned to the United States on October 8, 2005, for 12 days and then returned to Iraq for the rest of that year. She returned to the United States on January 24, 2006, when her employment in Iraq ended. She lived in Germany from February 12, 2006, until July 2, 2006, when she moved to South Carolina to work for the Department of Justice.

**[*4]**   Petitioners did not open an Iraqi bank account or obtain Iraqi driver's licenses during 2004 or 2005.  They did not belong to any social or religious organizations outside the military base during 2004 or 2005.  They developed friendships with Iraqi military personnel and Iraqi citizens during the course of their work.

On May 1, 2005, FBW and petitioners' children moved to Germany, where FBW continued his work with CACI.  ELMW joined the family and worked in Germany from February 12, 2006, through July 2, 2006.  FBW lived in Germany until December 12, 2006, except for trips to the United States from October 5 through 21, 2005, and January 24 through February 12, 2006.

FBW had relatives in Germany, and he and the family were able to spend time with them while they were there.  Petitioners worked on a military base during 2006.  During that year they leased a townhouse that was not on the base.  They did not have a German bank account.

Tax Return Filings

When petitioners commenced their employment in Iraq, the regional manager for their employer directed them to forms used to claim the section 911 foreign earned income exclusion.  Petitioners never consulted an accountant or return preparer or other tax professional about their eligibility for the exclusion.

**[*5]** The Internal Revenue Service (IRS) has no record of returns filed by petitioners for 2004, 2005, or 2006 before January 8, 2016.

On May 22, 2007, the IRS prepared substitutes for returns for petitioners' tax years 2004 and 2005, pursuant to section 6020(b). On August 19, 2008, the IRS prepared a substitute for return for petitioners' tax year 2006. After the IRS received petitioners' returns in January 2016, assessments based on the substitutes for returns were abated.

An examination of petitioners' returns was conducted, and on August 17, 2017, a Form 300, Civil Penalty Approval Form, approving the assertion of substantial understatement penalties under section 6662(a), was signed by the immediate supervisor of the examining agent. Transcripts of petitioners' accounts for the years in issue do not reflect any prior assertion of that penalty.

The returns petitioners submitted on January 8, 2016, for 2004, 2005, and 2006 were dated September 30, 2005, September 15, 2006, and September 29, 2007, respectively. Each return showed a Texas address for petitioners. The return for 2004 did not include a Form 2555, Foreign Earned Income, although reference to such a form was made on the first page of the return. The 2005 return included separate Forms 2555 for each petitioner, and the 2006 return included a Form 2555 for FBW. On line 9 of each Form 2555, petitioners reported their tax

**[*6]** home as a Texas address established in March 2001. They claimed foreign earned income exclusions of $140,109, $103,202, and $71,929 for 2004, 2005, and 2006, respectively.

Petitioners' return for 2004 reported $49,563 in adjusted gross income after the claimed exclusion and $5,156 tax owed. Their return for 2005 reported $67,916 in adjusted gross income after the claimed exclusion and $4,406 in tax owed. Petitioners' return for 2005 failed to report an early retirement distribution to FBW of $20,108 and wages of $17,000 petitioners received.

The Forms 2555 petitioners submitted for 2005 and 2006 contained inaccuracies as to dates that petitioners were in the United States and omissions of information prescribed by the regulations. FBW's Form 2555 for 2005 referred to a physical presence "from 5/1/2005 through 12/31/2013" (suggesting that the form was prepared sometime after the date appearing next to petitioners' signatures on the return). None of the returns contained a statement on the first page that it was "Filed Pursuant to Section 1.911-7(a)(2)(i)(D)", as prescribed by the identified regulation.

**[*7]**                                    OPINION

Preliminary Comments

Respondent contended through trial and in the opening brief that petitioners did not maintain sufficient contacts in Iraq or Germany to qualify for the exclusion of foreign earned income under section 911. In order to focus on the procedural challenges to the validity of the elections, respondent no longer challenges petitioners' claims to the foreign earned income exclusions on the merits of their status as qualified individuals. The minimal facts in the record concerning petitioners' respective ties to the United States, on the one hand, or Iraq and Germany, on the other, are included in our findings; but we reach no conclusion as to whether the ties were sufficient to establish a foreign "tax home".

Respondent's procedural arguments may be made and addressed from the stipulated returns. Respondent contends that those returns were not filed until January 2016. Petitioners claim that the returns were filed before that date, and the dates appearing next to their signatures are apparently intended as evidence of timeliness.

ELMW testified that conditions on the base in Iraq made it impossible to secure proof of mailing returns to the IRS. She did not testify directly as to when and how the 2004 return was prepared and mailed from Iraq or why conditions

**[\*8]** there prevented timely filing of the 2005 return in 2006 after petitioners left Iraq or the 2006 return in 2007 when they were back in Texas.  We cannot accept their claim that the returns were filed before 2016.  For all issues, therefore, we conclude that the 2004, 2005, and 2006 returns were filed in January 2016.

Section 911 and Required Election

Section 911(a) provides that "[a]t the election of a qualified individual" the qualified individual may exclude from gross income the foreign earned income of such individual.  To qualify for the exclusion, the taxpayer must satisfy a three-part test:  (1) the taxpayer must be a United States citizen who is a bona fide resident of a foreign country for an entire taxable year or physically present in a foreign country during at least 330 days out of a 12-month period, sec. 911(d)(1), (2) the taxpayer must have earned income from personal services rendered in a foreign country, sec. 911(d)(2), and (3) the taxpayer's tax home for the period must be outside the United States, sec. 911(d)(3).

Section 911(a) is silent on the timing of a valid election.  However, section 911(d)(9) gives the Secretary specific authority to promulgate regulations on the making of an election by mandating that "[t]he Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this

**[*9]** section". Section 7805(d) provides that "any election under this title shall be made at such time and in such manner as the Secretary shall prescribe." Pursuant to this authority, the Secretary promulgated section 1.911-7(a)(2)(i), Income Tax Regs., which establishes timing requirements for a valid election. We have previously rejected challenges to the regulation. See Faltesek v. Commissioner, 92 T.C. 1204 (1989); McDonald v. Commissioner, T.C. Memo. 2015-169.

The regulation provides four alternative timing methods by which a taxpayer may validly make the election. See sec. 1.911-7(a)(2)(i), Income Tax Regs. Because petitioners' returns were not filed before January 2016, only the fourth alternative is available, and it applies provided:

(1) The taxpayer owes no federal income tax after taking into account the exclusion and files Form 1040 with Form 2555 or a comparable form attached either before or after the Internal Revenue Service discovers that the taxpayer failed to elect the exclusion; or

(2) The taxpayer owes federal income tax after taking into account the exclusion and files Form 1040 with Form 2555 or a comparable form attached before the Internal Revenue Service discovers that the taxpayer failed to elect the exclusion.

(3) A taxpayer filing an income tax return pursuant to paragraph (a)(2)(i)(D)(1) or (2) of this section must type or legibly print the following statement at the top of the first page of the Form 1040: "Filed Pursuant to Section 1.911-7(a)(2)(i)(D)."

**[*10]** Sec. 1.911-7(a)(2)(i)(D), Income Tax Regs.  Because the IRS discovered the failure to elect the exclusion and prepared substitutes for returns under section 6020(b) before petitioners filed returns, we deal below with subdivisions (i)(D)(1) and (3).

(Petitioners also cite a procedure by which they might have requested a private letter ruling under section 301.9100-3, Proced. & Admin. Regs., with respect to the situation described in subdivision (i)(D)(2), where they owed Federal income tax after taking the exclusion into account and the IRS discovered their failure to elect the exclusion.  Because they did not make such a request, we do not address that argument.)

Section 1.911-7(a)(4), Income Tax Regs., provides that inadvertent errors or omissions do not render an election invalid if they are not material in determining whether the individual is a qualified individual or intends to make the election.

2004 and 2005

As to subdivision (i)(D)(1), respondent contends that for 2004 and 2005 petitioners owed tax after taking into account the exclusions and therefore they are not entitled to the benefit of subdivision (i)(D)'s extension of the timeliness requirements for the elections.  The returns petitioners filed for those two years reported amounts owing even after the exclusions were claimed.

**[*11]** Respondent's view is that the requirement of section 1.911-7(a)(2)(i)(D)(1), Income Tax Regs., that a taxpayer "owe[] no federal income tax after taking into account the exclusion" refers to there being no amount reported as "amount you owe" on the filed return. (For 2005 petitioners have conceded that they had unreported income from a retirement distribution and wages; additional tax was also owed on those omitted items. We do not express an opinion as to whether the conceded adjustments would be taken into account if petitioners had not reported a balance owed for 2005.)

Petitioners argue that application of credits from 2010, 2011, 2012, and 2014 eliminated the tax owed for 2004 and 2005. Subsequent credits to a taxpayer's account do not change the amount owed on a return; they merely reflect amounts deemed paid. Petitioners are not entitled to bootstrap their argument that tax was not owed by asserting that tax reported as owed was subsequently paid. The reported liabilities for 2004 and 2005 disqualify their elections of the foreign earned income exclusion for those years because their belated filings do not qualify under subdivision (i)(D)(1).

2006

Respondent concedes that petitioners did not owe tax after taking into account the exclusion for 2006. However, respondent argues that the failure to

**[\*12]** type or print the statement specified in subdivision (i)(D)(3) on the top of the return for that year (and those for 2004 and 2005) is fatal. Respondent points out that the text of the regulation and the word "must" make the requirement mandatory. Respondent also explains at length why petitioners' omissions are material. Respondent contends that strict compliance with the requirements of the regulation, including the statement on the first page of the return citing section 1.911-7(a)(2)(i)(D), Income Tax Regs., is necessary to allow the IRS to make an accurate determination of petitioners' eligibility for the exclusion on a late-filed return.

Petitioners' eligibility for the exclusion depends on accurate information as to the days FBW spent in Germany and the location of petitioners' tax home during 2006. Petitioners claim to have read the instructions before filing their return and do not explain how the omission could be regarded as inadvertent. The return was filed over eight years after the election was due and at a time when petitioners' tax status had been challenged by the IRS. The circumstances called for care in complying with the applicable regulations. None of the predicates for the exception to the timely filing requirements can be regarded as immaterial when each is a specified element of qualifying for the exception; i.e., they have a consequence. Omission of the notice required on the first page of the return must

**[*13]** also be considered with other errors in determining whether an individual is qualified for the exclusion and intends to make the election.

We have also considered whether petitioners' late returns substantially complied with the regulations. Respondent argues that the doctrine does not apply because the applicable standards are established in section 1.911-7(a)(4), Income Tax Regs. In any event respondent argues that the doctrine of substantial compliance does not apply where the failure to comply fully relates to the substance or essence of a statute and the statute or regulation provides the manner in which an election is made with detailed specificity. See Estate of Gunland v. Commissioner, 88 T.C. 1453, 1458-1459 (1987); Taylor v. Commissioner, 67 T.C. 1071, 1077-1078 (1977).

The regulations in this case are detailed and specific and are not lacking in clarity. Cf. Estate of McAlpine v. Commissioner, 968 F.2d 459, 462 (5th Cir. 1992) (holding that a taxpayer who exercises due diligence and good faith in complying with an unclear regulation may be held to have substantially complied), aff'g 96 T.C. 134 (1991). They include unambiguous provisions, one of which was not complied with by petitioners.

Citizens of the United States are generally taxed on income earned outside the United States unless a specific exclusion applies. Specking v. Commissioner,

**[\*14]** 117 T.C. 95, 101-102 (2001), aff'd sub nom. Haessly v. Commissioner, 68 F. App'x 44 (9th Cir. 2003), and aff'd sub nom. Umbach v. Commissioner, 357 F.3d 1108 (10th Cir. 2003). Exclusions from income are construed narrowly; taxpayers must bring themselves within the clear scope of the exclusion. Id. at 101; see Commissioner v. Jacobson, 336 U.S. 28, 49 (1949).

The exclusion under section 911 depends on a valid election. The specific provisions of section 1.911-7(a)(2)(i)(D), Income Tax Regs., create an exception to the timeliness rules for a valid election and thus relate to the substance of the statute that provides an exclusion from the normal rules of taxation. The failure to place the required statement on the front of the return is not just an error in filling out a complex form. It is a material omission. The Form 2555 contained other errors, omissions, and inconsistencies, including reporting that petitioners' tax home was in Texas during 2006. Under these circumstances, we cannot hold that petitioners substantially complied with the requirements. Their untimely election for 2006 was not valid.

Late-Filing and Substantial Understatement

The Commissioner has the burden of production with respect to penalties. Sec. 7491(c). Once the Commissioner produces evidence that the penalty is

**[\*15]** appropriate, the taxpayers bear the burden of proof as to any defense to the penalty.  See generally Higbee v. Commissioner, 116 T.C. 438 (2001).

Section 6651(a)(1) imposes an addition to tax for the late filing of a return absent a showing by the taxpayers of reasonable cause and a lack of willful neglect.  For the reasons discussed at the beginning of this opinion, we conclude that petitioners' returns for 2004, 2005, and 2006 were not filed until January 2016 and that they have not established reasonable cause or lack of willful neglect. The additions to tax for the late filing of the returns will be sustained.

Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on any portion of an underpayment of Federal income tax that is attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax.  An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000.  Sec. 6662(d)(1).  Because we agree with respondent that petitioners are not entitled to exclude foreign earned income for the years in issue, a substantial understatement of tax has been shown.  The stipulated exhibits also show that respondent's agent obtained the required supervisory approval under section 6751(b).

Once the Commissioner has met the burden of production, the taxpayer must come forward with persuasive evidence that the penalty is inappropriate

**[*16]** because, for example, he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449. The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor in determining reasonable cause and good faith is the extent of the taxpayer's effort to assess his or her proper income tax liability. Id.

Although petitioners argue that they followed the instructions in electing the foreign earned income exclusion, their Forms 2555 were inadequate for the reasons discussed above. They did not consult any qualified tax professional as to their eligibility for the exclusion or the proper manner of electing it. They have not offered any persuasive explanations of the failure to file timely returns, and their retrospective arguments for exceptions to the timeliness requirements for the elections are not indications of a good-faith effort made when the returns were due.

**[*17]**  We have considered the other arguments of the parties.  They are either without merit or not necessary to address in view of our resolution of the issues.

<u>Decision will be entered for</u>

<u>respondent</u>.